908 P.2d 520 (1995)
Judy Anne SAMMS, and Frank Clifford Samms, Petitioners,
v.
The DISTRICT COURT, FOURTH JUDICIAL DISTRICT OF the STATE OF COLORADO, and Steven T. Pelican, one of the Judges thereof, Respondents.
No. 95SA22.
Supreme Court of Colorado, En Banc.
December 18, 1995.
As Modified on Denial of Rehearing January 8, 1996.
*522 Robert S. Fisher, Colorado Springs, for Petitioners.
Kennedy & Christopher, P.C., Mark A. Fogg, John R. Mann, Matthew S. Feigenbaum, Denver, for Respondents.
Curt Kriksciun, Michael J. Steiner, Denver, for Amicus Curiae, Colorado Compensation Insurance Authority.
Johnson, Ruddy, Norman & McConaty, Brian G. McConaty, Thomas H. Anderson, Denver, for Amicus Curiae Colorado Defense Lawyers Association.
Dawes and Harriss, P.C., Gail C. Harriss, Durango, for Amicus Curiae Workers' Compensation Education Association.
Schaden, Lampert & Lampert, Susanna Meissner-Cutler, Denver, for Amicus Curiae, Colorado Trial Lawyers Association.
*521 Justice KIRSHBAUM delivered the Opinion of the Court.
The petitioners, Judy Anne Samms (hereafter referred to as "Samms") and her husband, Frank Clifford Samms, have initiated this original proceeding pursuant to C.A.R. 21. The petitioners seek relief from an order entered by the respondent, the District Court for the Fourth Judicial District of the State of Colorado (the trial court), which *523 order authorized the attorney representing Dr. Michael Bjork, the defendant in a medical malpractice action filed by the petitioners, to conduct ex parte interviews with several physicians who had treated Samms. Having issued a rule to show cause why the relief requested should not be granted, we now discharge the rule in part and make the rule absolute in part.

I
On March 2, 1991, Samms visited the emergency room of a Colorado Springs hospital complaining of upper abdominal pain. Bjork, her treating physician, conducted several tests and concluded that Samms was suffering from peptic acid disease with reflux esophagitis. He then discharged her from the emergency room.
Samms continued experiencing medical difficulties and sought medical advice and treatment for her condition from numerous other physicians. When a cardiologist concluded that Samms had suffered a myocardial infarction on March 2, 1991, resulting from a pre-existing condition of myocardial ischemia, the petitioners initiated this medical malpractice action. Samms alleges that Bjork negligently failed to diagnose and properly treat her on March 2, 1991, and that as a result of such negligence she suffered physical and mental injuries. Her husband alleges that he suffered a loss of consortium as a result of Bjork's negligence.
During the course of discovery Bjork's attorney sent a letter dated July 23, 1993, to the petitioners' attorney. The letter informed the petitioners' attorney that Bjork's attorney intended "to conduct ex parte interviews" with five physicians who had treated Samms and that "if any particular interview poses a reasonable concern that privileged matters not already waived by the filing of this suit will be disclosed, I will provide you with adequate notice and the opportunity to be present." The petitioners objected to any ex parte interviews by Bjork's attorney with any physicians who had treated Samms and filed a motion with the trial court to prohibit Bjork's attorney from conducting the proposed interviews.
On November 13, 1993, the trial court entered an order (hereafter referred to as the "1993 order") denying the petitioners' motion and authorizing Bjork's attorney to interview the physicians in the absence of Samms or Samms' attorney. In so doing, the trial court stated that it declined to follow this court's decision in Fields v. McNamara, 189 Colo. 284, 540 P.2d 327 (1975). In its 1993 order the trial court stated that Samms had placed her physical and mental condition in issue and "any other injuries or conditions, `which arguably could have caused or contributed to the injuries or damages alleged in the complaint.'" (Citations omitted.) The order also contained the following pertinent provisions:
2. The scope of the waiver of the privilege has been set forth above. Based thereon, counsel for the [petitioners] may not "caution" any of the listed physicians in the manner suggested in his Reply Brief or in any similar manner. Any physician who is interviewed by defense counsel, ex parte, shall be provided with a copy of this Order so that he is aware, before the interview, of the scope of the waiver of the privilege.
3. Counsel for [Bjork] shall at all times be aware of the scope of the waiver of the privilege set forth herein. The Court agrees ... that, "... it is unethical for counsel, in any context, to attempt to elicit information which counsel knows or should know is subject to a statutory privilege which has not been waived." [T]his Court has defined the scope of that privilege in the case at bar.
4. This Order shall not apply to any physicians other than those listed above without prior application for extension by counsel.
5. Defense counsel shall provide notice of any ex parte contact with any of the above-mentioned treating physicians in which there is a "reasonable probability of disclosure of material which may be privileged or subject to protective order." That notice will comply with the Rules of Civil Procedure regarding notices of deposition and any Motion for Protective Orders shall comply with C.R.C.P. [26(c)].
*524 The petitioners did not seek review of the 1993 order.
Between November 13, 1993, and November 4, 1994, Bjork's attorney conducted interviews with several of the physicians referred to in the July 23, 1993, letter. On November 4, 1994, Bjork's attorney sent another letter to the petitioners' attorney. This letter indicated that Bjork's attorney intended to conduct similar ex parte interviews with fifteen additional physicians. The petitioners objected to such interviews and promptly filed a second motion for protective order. On January 5, 1995, the trial court entered an order (hereafter referred to as the "1995 order") denying the motion with respect to fourteen of the physicians named in the November 4, 1994, letter. The trial court stated that its 1995 order was based on its 1993 order. The petitioners subsequently filed this petition for writ of prohibition.

II
Issues arising in the course of pretrial discovery are committed to the discretion of the trial court and are in general reviewable only on appeal. Hamon Contractors, Inc. v. District Court, 877 P.2d 884, 887 (Colo.1994); Clark v. District Court, 668 P.2d 3, 7 (Colo. 1983). However, if an order regulating pretrial discovery may result in damage to a litigant that cannot be cured on appeal, this court may consider the matter in the exercise of its original jurisdiction. Hamon Contractors, Inc., 877 P.2d at 887; Clark, 668 P.2d at 7. In this case we choose to exercise our original jurisdiction.

III
The General Assembly has defined the physician-patient privilege in the following pertinent language:
(d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient....
§ 13-90-107(1)(d), 6A C.R.S.(1987). The statutory privilege is that of the patient and may be waived only by the patient. Clark, 668 P.2d at 8. The privilege is designed to encourage a patient to make full disclosure to his or her treating physician to promote effective diagnosis and treatment and to protect the patient from embarrassment which might result from the physician's disclosure of information regarding the patient's medical condition or treatment. Id.; Williams v. People, 687 P.2d 950, 953 (Colo.1984).
When a patient initiates a civil action and by alleging a physical or mental condition as the basis for a claim of damages injects that issue into the case, the patient thereby impliedly waives his or her physician-patient privilege with respect to that medical condition. Clark, 668 P.2d at 10. Such implied waiver constitutes consent for purposes of section 13-90-107(1)(d). Clark, 668 P.2d at 10.
In this case, Samms has alleged that Bjork's failure to properly diagnose myocardial ischemia resulted in injury to her. By injecting that issue into the case, Samms waived her physician-patient privilege with respect to information related to her heart condition obtained by a physician in the course of diagnosing or treating Samms for that condition. The question for determination is whether and to what extent this waiver authorized the trial court to allow Bjork's attorney to conduct informal interviews with Samms' treating physicians in the absence of Samms or Samms' attorney.

A
Courts are divided with respect to the question of whether in the absence of a plaintiff's express consent a trial court may authorize an attorney representing a defendant in a civil action to communicate informally with non-party physicians who have treated the plaintiff in the absence of the plaintiff or the plaintiff's attorney. Compare Felder v. Wyman, 139 F.R.D. 85 (D.S.C.1991) (ex parte interviews allowed); Doe v. Eli Lilly & Co., 99 F.R.D. 126 (D.D.C.1983) (ex parte communications between defense counsel and patient's treating physician not precluded when patient has waived physician-patient privilege); *525 Langdon v. Champion, 745 P.2d 1371 (Alaska 1987) (same); Green v. Bloodsworth, 501 A.2d 1257 (Del.Super.Ct.1985) (same); Domako v. Rowe, 438 Mich. 347, 475 N.W.2d 30 (1991) (same); Brandt v. Medical Defense Assocs., 856 S.W.2d 667, 673 (Mo.1993) (treating physician does not have duty to give testimony that is favorable and beneficial to the patient and detrimental to the opponent); Stempler v. Speidell, 100 N.J. 368, 495 A.2d 857 (1985) (ex parte communications not precluded by rule or statute and are an accepted method of assembling facts and documents in preparation for trial); with Horner v. Rowan Co., 153 F.R.D. 597 (S.D.Tex.1994) (ex parte interviews not permitted in the absence of patient's express authorization); Weaver v. Mann, 90 F.R.D. 443 (D.N.D.1981) (ex parte interviews not contemplated by Federal Rules of Civil Procedure); Garner v. Ford Motor Co., 61 F.R.D. 22 (D.Alaska 1973) (same); Petrillo v. Syntex Labs., Inc., 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986), appeal denied, 113 Ill.2d 584, 106 Ill.Dec. 55, 505 N.E.2d 361 , cert. denied sub nom. Tobin v. Petrillo, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987) (ex parte conferences not permitted because of confidential relationship between a physician and patient);[1]Wenninger v. Muesing, 307 Minn. 405, 240 N.W.2d 333 (1976) (depositions guard against unauthorized disclosure of privileged information and presence of patient's attorney protects physician from inadvertent disclosure of confidential information);[2]Crist v. Moffatt, 326 N.C. 326, 389 S.E.2d 41 (1990) (ex parte discussions not allowed without plaintiff's consent or court order); Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 146 (1962) (physician owes patient a duty to refuse affirmative assistance to patient's adversary in litigation).
In Clark v. District Court, 668 P.2d 3, 10 (Colo.1983), we concluded that a plaintiff in a personal injury case impliedly waives the physician-patient privilege with respect to matters known to the physician that are relevant in determining the cause and extent of injuries which form the basis for a claim for relief. We also concluded, however, that such plaintiff does not impliedly waive the physician-patient privilege with respect to all his or her personal medical matters. Id. We thus recognized in Clark that the extent to which a plaintiff waives the physician-patient privilege by seeking judicial determination of the cause and extent of personal injuries will necessarily depend upon the particular circumstances of the case. While the waiver in some situations might extend to all matters discussed by the plaintiff with a physician, in other situations some or all of such discussions will remain subject to the privilege.

B
We have recognized that the purpose of pretrial discovery is to eliminate surprise at trial, discover all relevant evidence, simplify the issues, and promote the expeditious settlement of cases. J.P. v. District Court, 873 P.2d 745, 748 (Colo.1994); Bond v. District Court, 682 P.2d 33, 40 (Colo.1984). *526 Informal methods of discovery not only effectuate the goals of the discovery process but tend to reduce litigation costs and simplify the flow of information. Trans-World Invs. v. Drobny, 554 P.2d 1148, 1152 (Alaska 1976). Personal interviews are an accepted informal method of discovery. See Doe, 99 F.R.D. at 128. A rule permitting informal communications between a defense attorney and a plaintiff's treating physician promotes the discovery process by assuring that both parties have access to an informal, efficient, and cost-effective method for discovering facts relevant to the proceedings. Bond, 682 P.2d at 40. A contrary rule would encourage resort to expensive and time-consuming formal discovery methods when such methods could be avoided. Doe, 99 F.R.D. at 128; Drobny, 554 P.2d at 1152.
In view of these considerations, we conclude that our rules of discovery permit a defense attorney to conduct informal interviews in the absence of a plaintiff or the plaintiff's attorney with physicians who have treated the plaintiff. Consequently, trial courts may authorize such informal interviews. However, we also conclude that such informal questioning must be confined to matters that are not subject to a physician-patient privilege and that the plaintiff must be given reasonable notice of any proposed informal interview. Such notice will afford a plaintiff or the plaintiff's attorney an opportunity to attend any scheduled interview. Such notice will also enable a plaintiff to take other appropriate steps to ensure that interviews are limited to matters not subject to the plaintiff's physician-patient privilege, such as to inform the physician of the plaintiff's belief that certain information known to the physician remains subject to the physician-patient privilege or to seek appropriate protective orders from the trial court.[3] Although a physician may refuse to participate in informal interviews, a plaintiff may not instruct his or her treating physician not to participate in such interviews solely for the purpose of preventing the disclosure of nonprivileged information.

IV
The petitioners argue that the trial court's order is inconsistent with this court's decision in Fields v. McNamara, 189 Colo. 284, 540 P.2d 327 (1975), and suggest that any rule authorizing a defense attorney to conduct ex parte interviews with a plaintiff's treating physicians would contravene Revised Ethics Opinion 71 of the Colorado Bar Association Ethics Committee. The petitioners also argue that ex parte communications should not be permitted because a treating physician complying with the order might be subject to liability for unauthorized disclosure of patient information. We reject these arguments.

A
The petitioners initially argue that our decision in Fields v. McNamara, 189 Colo. 284, 540 P.2d 327 (1975), prohibits trial courts from issuing orders such as the one entered by the trial court. In Fields, the plaintiff alleged injuries to his head, neck, back, and chest and other injuries resulting from an automobile accident. Id. at 285, 540 P.2d at 328. During discovery the trial court entered an order permitting the defendant's attorney to inspect and copy records, reports, and X-rays "limited, however, to the areas and disabilities for which Plaintiff is claiming injury." Id. The trial court further ordered the plaintiff to execute a form authorizing his physicians, inter alia, to undertake the following action:
to disclose and deliver to [defendant's attorney] all facts and particulars desired with reference to [any] past, present and future physical condition and to furnish said parties any transcripts or hospital *527 case histories or written records or copies of x-rays or physicians' or surgeons' diagnosis [sic] requested, provided, however, that such disclosure and furnishing shall be limited to physical conditions concerning [the plaintiff's] head, neck, back, arms, legs, chest and hips and physical conditions causing headaches, nosebleeds, diarrhea, blurred vision, nausea, pain in the hips, back and neck, and numbness and/or tingling of the arms and legs.
Id. (emphasis in original). In an original proceeding, we issued a rule to show cause to examine the breadth of the trial court's order. Id. at 284, 540 P.2d at 327. Asserting that a plaintiff waives the physician-patient privilege respecting medical matters "directly pertaining to the case filed by a plaintiff," the petitioner argued that the trial court's order erroneously permitted "unlimited inspection and copying in areas which could well be still privileged because they are correlated to the action in question." Id. at 286, 540 P.2d at 328.
We held that the trial court's order was too broad insofar as it authorized ex parte questioning of physicians by defendant's counsel. Id. at 286, 540 P.2d at 328-29. Noting that a plaintiff may stipulate that defense counsel can engage in limited discussions with a physician who treated the plaintiff, we stated that a trial court "cannot order such ex parte proceedings." Id.
While Fields may be read to prohibit, absent a plaintiff's consent, all forms of communication between a defense attorney and physicians who treated a plaintiff in the absence of the plaintiff or the plaintiff's attorney, such broad characterization of our holding in that case is not compelled by the sparse language of the opinion. The show cause order raised the limited issue of the breadth of the provisions of the authorization form the plaintiff was compelled to execute. The plaintiff did not argue that the trial court had no authority to require the plaintiff to authorize his physicians to disclose documents and facts relating solely to the action and therefore not privileged. We held only that the trial court's order went "too far." However, to the extent that our decision in Fields suggests that in civil actions trial courts may not authorize a defense attorney, in the absence of the plaintiff or the plaintiff's attorney, to informally interview physicians who have treated the plaintiff regarding matters that are not subject to the physician-patient privilege, we disapprove of that decision.

B
Petitioners suggest that any rule authorizing a defense attorney to conduct informal interviews with a plaintiff's treating physician in the absence of the plaintiff or the plaintiff's attorney would contravene Ethics Opinion 71 and section 6.3 of the Interprofessional Code of Responsibility.[4] In our view, neither the Ethics Opinion nor the Interprofessional Code prohibits informal interviews of the type we approve.
Ethics Opinion 71, as revised, provides in pertinent part as follows:
By pleading a physical or mental condition as the basis of a claim in a personal injury or medical malpractice case, a plaintiff impliedly waives the physician-patient privilege or psychologist-client privilege of confidentiality for matters relating to those conditions. However, a lawyer representing a defendant in that lawsuit may engage in ex parte discussions with the plaintiff's treating physicians or psychologists concerning the doctor's care and treatment of the plaintiff or opinions resulting from that care and treatment only after first giving plaintiff's counsel reasonable notice and an opportunity to be present. In the event of a dispute between plaintiff's counsel and defendant's counsel, recourse to the formal discovery process remains an option.
CBA Ethics Comm., Rev. Formal Op. 71 (1985). Interprofessional Code section 6.3 provides in pertinent part as follows:

*528 6.3 A treating physician should not discuss the case privately with a patient's adversaries without a clear and expressed authorization to do so or without knowledge by the patient's attorney of the time and place with an opportunity to object or be present at that meeting....
We initially note that the rule we announce today does not conflict with Ethics Opinion 71. Furthermore, we do not view such rule to be inconsistent with section 6.3 of the Interprofessional Code. The comments to section 6.3 of the Interprofessional Code contain the following statements:
If such [express] authorization is not provided, the physician should advise his or her patient's counsel ... concerning the contact so as to enable that attorney to object to any such private contact or attend... any such consultation with the opposing party.
Thus the purpose for the requirement of prior express authorization is to ensure that the patient has had an opportunity to protect the patient's interests.
The rule we announce today requires a defense attorney to initially provide the plaintiff with reasonable notice so as to enable the plaintiff to protect his or her interests. Additionally, although by filing a civil action alleging injuries a plaintiff impliedly waives his or her physician-patient privilege with respect to matters pertaining to those injuries, a treating physician may decline to participate in ex parte discussions with defense counsel. Finally, it must be presumed that both attorneys and physicians will conduct themselves ethically. A treating physician has a primary obligation to tell the truth, regardless of whether his or her testimony will help or hinder the patient's case. See Brandt, 856 S.W.2d at 673. Attorneys may not seek information not relevant to the physical or mental condition at issue in the litigation, and non-party treating physicians have no incentive to make irrelevant disclosures. See Felder v. Wyman, 139 F.R.D. 85, 89 (D.S.C.1991). Attorneys and physicians who violate the provisions of their respective codes of professional conduct remain subject to appropriate professional disciplinary procedures.

C
The petitioners argue that in the course of conducting an ex parte interview with a treating physician an attorney representing a party adverse to the patient might attempt to improperly influence the physician's trial testimony. That danger is inherent in every contact between an attorney and a prospective witness for a party adverse to the attorney's client. This legitimate concern does not warrant adoption of a rule prohibiting a defense attorney from informally communicating with a plaintiff's treating physician on matters not subject to a physician-patient privilege so long as the plaintiff is afforded reasonable notice of any proposed interview to permit the plaintiff or the plaintiff's attorney to attend or to seek appropriate protective orders. Stempler v. Speidell, 100 N.J. 368, 495 A.2d 857, 863 (1985).
In addition, Samms contends that during any ex parte interview with Bjork's attorney a treating physician may inadvertently disclose information regarding Samms' medical condition which is not relevant to issues in the case or for which her privilege has not been waived. She notes that because the physician may not be able to distinguish between information for which the privilege has been waived and information that remains privileged, the task of determining relevancy will impermissibly rest in the discretion of Bjork's attorney, who may not know that confidential information is about to be elicited. See Roosevelt Hotel Ltd. v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986).
We recognize that informal communications between lawyers representing a defendant and a physician who has treated a plaintiff affect many persons. The patient may be concerned that privileged information may be disclosed before the patient has any meaningful opportunity to object to the information solicited. The attorney representing the party seeking discovery is concerned about potential disciplinary proceedings for professional misconduct in seeking to elicit information for which the privilege has not been waived. The physician may be concerned about disclosing information to which the *529 physician-patient privilege has not been waived. The scope of any implied waiver necessarily depends on the nature of the claim asserted by the patient, and physicians as well as attorneys and judges may at times find the task of delineating the scope of a waiver to be problematical.
In our view, these and similar legitimate issues may be addressed by the trial court in those situations wherein the parties and the physician are unable to resolve them informally.[5] We here determine only that, contrary to the petitioners' argument, a trial court has authority to permit a defense attorney to conduct informal interviews with a plaintiff's treating physicians in the absence of the plaintiff or the plaintiff's attorney about matters not subject to a physician-patient privilege so long as the plaintiff is given reasonable notice of such interviews to permit the plaintiff or the plaintiff's attorney to attend or to take other appropriate steps to ensure that privileged information will not be discussed.

V
The trial court's January 5, 1995, order is based on the trial court's initial November 13, 1993, order. Although the 1993 order contains a statement that the scope of the waiver of the physician-patient privilege has been delineated and refers to some of the allegations of the complaint, the order does not specifically define the scope of Samms' waiver and no copy of the complaint is attached thereto. Neither order requires Bjork's attorney to give reasonable notice to Samms of when and where the informal interviews will be conducted. The 1993 order does direct Bjork's attorney to give notice when there is a "reasonable probability of disclosure of material which may be privileged or subject to protective order." However, Samms and Samms' physician, not Bjork or Bjork's attorney, know what privileged information the physician has acquired from Samms. Furthermore, the 1993 order implies that Bjork's attorney can elect not to notify Samms of proposed interviews in some circumstances.
As we have indicated, the patient and the physician must be informed specifically of the scope of the plaintiff's waiver of the physician-patient privilege prior to any informal interviews of the physician, whether by agreement of the parties or by court order. In the absence of such specificity, neither the interviewing attorney nor the physician will be able to ascertain what matters remain subject to the plaintiff's physician-patient privilege and therefore may not be discussed. A trial court determining that informal interviews by a defense attorney of a plaintiff's treating physicians in the absence of the plaintiff or the plaintiff's attorney are warranted must also make certain that the plaintiff or the plaintiff's attorney has an opportunity to attend any such informal interviews by requiring reasonable notice thereof.
The orders entered by the trial court in this case were entered prior to our decision here. We conclude that in fairness to both parties and to the physicians involved the trial court should be given an opportunity to reconsider its 1995 order in light of this opinion, giving particular attention to delineation of the scope of Samms' waiver of her physician-patient privilege.

VI
For the foregoing reasons, we conclude that the trial court had authority to authorize Bjork's attorney to conduct informal interviews with Samms' treating physicians, in the absence of Samms or her attorney, provided that the discussions are limited to relevant *530 non-privileged information and provided further that Samms must be given reasonable notice of such interviews to permit her attorney to attend or to otherwise ensure that privileged information is not discussed. We also conclude that the trial court should be given an opportunity to reconsider its 1995 order. We therefore discharge in part and make absolute in part the rule to show cause previously issued herein; vacate the 1995 order entered by the trial court; and return the case to the trial court with directions to conduct further proceedings consistent with this opinion.
KOURLIS, J., concurs and specially concurs, and VOLLACK, C.J., joins in the concurrence and special concurrence.
ERICKSON, J., dissents.
Justice KOURLIS concurring and specially concurring:
The majority holds that a trial court may authorize ex parte[1] interviews between opposing counsel and a non-party physician witness with reasonable notice to counsel for the patient. Maj. op. at 525-529. I agree. However, I write separately because I reach those conclusions using a different analytical framework. Therefore, I specially concur in the majority opinion.
This is an original proceeding under C.A.R. 21 in which the plaintiffs seek relief from an order entered by the trial court that permits ex parte contact between the defendant's counsel and several non-party treating physicians. I conclude that the trial court had the authority to enter that order, and the authority to condition it upon defendant's counsel providing reasonable notice of the anticipated contact.
Three general principles of law and considerations of judicial economy and efficiency govern this matter. First, the purpose of discovery is preparation for trial. See J.P. v. District Court, 873 P.2d 745, 748 (Colo.1994). The purpose of trial is ascertainment of truth. The court's function is to facilitate those processes: to assure that both parties have access to an efficient, effective method of resolving disputes. See Bond v. District Court, 682 P.2d 33, 40 (Colo.1984). Witnesses offer testimony at trial regarding the controverted issues to assist the trier of fact in arriving at the truth. Neither party has a right of ownership to or loyalty from any witness. See International Business Machines Corp. v. Edelstein, 526 F.2d 37, 42 (2d. Cir.1975) ("[C]ounsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made."); Doe v. Eli Lilly & Co., 99 F.R.D. 126 (D.D.C.1983).
The second principle is that the Colorado Rules of Civil Procedure govern the progress and process of discovery in civil actions such as the one before us.[2] Under the Rules, the scope of discovery is very broad. Williams v. District Court, 866 P.2d 908, 911 (Colo. 1993). Thus, under C.R.C.P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." This includes the location and identification of any persons having knowledge of any discoverable matter. Parties are required to identify non-expert witnesses and expert witnesses during the course of discovery. C.R.C.P. 26(a)(1). Discovery against expert witnesses progresses according to certain procedures.[3] C.R.C.P. 26(b)(4). Discovery against non-expert witnesses is not similarly constrained under the Rules.
An attorney for a party has a right to interview any witness who has access to information relevant to the disputed issues. International Business Machines Corp., 526 F.2d at 42. Despite this general rule, an attorney may not ask questions that impinge on areas of privilege.
*531 The issue presented to us is whether physician witnesses are to be treated differently from other witnesses and insulated from any contact by opposing counsel unless such contact occurs with the permission or presence of the plaintiff. The plaintiff argues that physicians should be treated differently than other witnesses because of the physician-patient privilege. § 13-90-107(1)(d), 6A C.R.S. (1987). The privilege provides in part:
A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient ...
§ 13-90-107(1)(d). Without patient consent, a physician may not be examined about privileged information.
We have previously held that the waiver inherent in the filing of a lawsuit constitutes consent for the purpose of the privilege statute as to the matters raised by the claims for relief. See Bond v. District Court 682 P.2d 33 at 38 (Colo.1984); Clark v. District Court, 668 P.2d 3, 10 (Colo.1983). Therefore, the privilege does not interpose an automatic bar to ex parte contact between opposing counsel and a non-party physician witness. If the non-party physician witness is not an expert witness, the Rules of Civil Procedure would permit opposing counsel to contact such person for an ex parte interview absent a protective order entered by the court prohibiting such contact.
I turn then to what I conceive to be the third general governing principle. Specifically, the trial court has broad discretion to address discovery matters as appropriate. See Williams v. District Court, 866 P.2d 908, 911 (Colo.1993). If a party or his or her non-party physician witness seeks protective orders prohibiting or limiting ex parte contact, the trial court is uniquely able to evaluate the competing interests and enter appropriate orders. Id. at 912.
Given these principles, I conclude that there is no special rule prohibiting opposing counsel from contacting treating nonparty physician witnesses on an ex parte basis.[4]
Ex parte interviews with non-party physicians are permissible with reasonable notice to opposing counsel, unless a trial court order provides otherwise. Upon application, the trial court has broad discretion to prohibit or regulate ex parte interviews as appropriate to the facts of the case. Therefore, I specially concur in the majority opinion in the present case.
I am authorized to say that Chief Justice VOLLACK joins in this special concurrence.
Justice ERICKSON dissenting:
I respectfully dissent.
I disagree with the majority's conclusion that a court in a personal injury action may authorize a defendant's attorney to conduct ex parte interviews with the plaintiff's treating physicians. See maj. op. at 525. In Fields v. McNamara, 189 Colo. 284, 540 P.2d 327 (1975), we held that a court may not order ex parte communications between defense counsel and a plaintiff patient's treating physicians in the absence of the plaintiff patient's express authorization. Id. at 286, 540 P.2d at 328-29. In Fields, the defendant in a personal injury action sought a court order requiring plaintiffs to execute medical authorization forms which allowed access to then-existing medical records and provided for private ex parte communications with plaintiffs' treating physicians. We held that the authorization was too broad and said:
The authorization, however, goes too far in permitting ex parte questioning of physicians or others concerning documents to be examined. Not infrequently counsel will stipulate that the defendant's attorney acting ex parte may ask physicians and others to identify documentary material and may ask certain questions concerning itand *532 this is oft-times good practice. The court, however, cannot order such ex parte proceedings; and, if the inspecting party needs further information concerning documentary material, the formal method of eliciting the same is by further discovery procedure.
Id. (emphasis added). See Neal v. Boulder, 142 F.R.D. 325, 328 (D.Colo.1992) (holding that under Fields a medical malpractice plaintiff may preclude defense counsel's ex parte communications with treating physicians). Our prohibition of ex parte interviews of treating physicians is supported by discovery limitations in a number of other jurisdictions. See Horner v. Rowan Cos., 153 F.R.D. 597, 601 (S.D.Tex.1994); Weaver v. Mann, 90 F.R.D. 443, 444-45 (D.N.D. 1981); Garner v. Ford Motor Co., 61 F.R.D. 22, 24 (D.Alaska 1973); Roosevelt Hotel Ltd. Partnership v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986); Crist v. Moffatt, 326 N.C. 326, 389 S.E.2d 41, 45 (1990).
The district court's order authorizing Bjork's attorney to conduct ex parte interviews with the plaintiff Samms' physicians contravenes the limitations imposed by our unanimous opinion in Fields. Accordingly, I would make the rule to show cause absolute and remand the case to the district court with directions to enter an order granting Samms' motion for a protective order.
NOTES
[1] The Illinois General Assembly rejected the holding of Petrillo by enacting Ill. Comp. Stat. ch. 735, §§ 5/2-1003, 5/8-802 and 5/8-2001 (effective March 9, 1995). These statutes provide generally that in personal injury actions any party who puts his or her physical or mental condition at issue thereby waives the physician-patient privilege and must, upon request by any other party to the action, sign a consent form authorizing the other party or that party's attorney to inspect and copy medical records and to confer with treating physicians regarding the patient's health conditions. These statutes do not address the issue of whether the patient or the patient's attorney may be present during such informal communications.
[2] The Minnesota legislature rejected the holding of Wenninger by enacting Minn.Stat. § 595.02, subd. 5 (1988). This statute provides that a patient waives the physician-patient privilege by filing an action alleging physical or mental injury and thereby permits all parties to the action to informally discuss with a treating physician the patient's health conditions as well as the physician's opinion with respect to those conditions. Minn.Stat. § 595.02, subd. 5 (1988). A party desiring such informal discussion must give the patient notice and the patient or the patient's attorney may be present during such discussions. Id. In Blohm v. Minneapolis Urological Surgeons, P.A., 449 N.W.2d 168, 170 (Minn.1989), the Supreme Court of Minnesota observed "that [§ 595.02, subd. 5] was designed to minimize the difficulties of obtaining an interview by eliminating plaintiff's right to veto."
[3] When an attorney representing a party adverse to a patient informally interviews a treating physician with respect to non-privileged matters in the absence of the patient or the patient's attorney, the interview is properly characterized as an "ex parte" interview. While the rules of discovery permit such ex parte interviews, because a patient may personally or through his or her attorney attend any interview of a treating physician scheduled by an adverse party, scheduled ex parte interviews may on occasion not occur. However, in the absence of a court order, a patient may not require an attorney for an adverse party to forego or postpone a scheduled informal ex parte interview of the patient's treating physician.
[4] The Interprofessional Code is a document, endorsed by the Colorado Bar Association, the Colorado Medical Society, the Denver Bar Association, and the Denver Medical Society, designed to provide attorneys and physicians "with a guide for harmonious interprofessional relations, promote better understanding between the professions, and aid in the resolution of interprofessional disputes."
[5] We do not suggest that formal discovery processes provide the only remedies for parties concerned about the scope of informal communications such as those here contemplated. A defense attorney need not seek court authorization before scheduling informal ex parte interviews. However, a defense attorney wishing to conduct such an interview must provide reasonable notice to the plaintiff, indicating the matters to be discussed. Such reasonable notice will inform the plaintiff of the proposed interviews; it is encumbent upon the plaintiff to take steps necessary to protect the physician-patient privilege to the extent it has not been waived. The parties may, of course, agree upon the scope of the interview. The plaintiff may also inform the physician of the plaintiff's belief that certain information known to the physician remains subject to the physician-patient privilege.
[1] The majority defines an ex parte interview as one that takes place outside the patient's or patient attorney's presence. Maj. op. at 526 n. 3.
[2] The Colorado Rules of Civil Procedure have been revised in pertinent part. This case was filed prior to the effective date of the revisions. Therefore, the prior version of the Rules applies.
[3] The physicians involved in this case were identified as treating physicians and not experts.
[4] The rule of law we today clarify speaks to the fact that the plaintiffs may not unilaterally bar such conversations, provided that the conversations are limited to the area of treatment waived by the filing of claims for relief. However, a physician may bar an informal interview with opposing counsel by declining to participate.