The PEOPLE of the State of Colorado, Petitioner,

v.

The DISTRICT COURT, COUNTY OF ADAMS, STATE OF COLORADO, and the Honorable Michael A. Obermeyer, Judge Thereof, Respondents.

No. 90SA25.

Supreme Court of Colorado, En Banc.

June 11, 1990.

Robert J. Loew, County Atty., Howard Reinstein, Asst. County Atty., Commerce City, for petitioner.

Shaun Pearman, Denver, for respondents.

Chief Justice QUINN delivered the Opinion of the Court.

The question in this case is whether during a judicial review of a psychologist's certification for short-term treatment of a person alleged to be mentally ill, the person so certified may invoke the psychologist-client privilege in order to prevent the certifying psychologist from testifying to information obtained from that person during an emergency evaluation, when such information is necessary to an informed decision on whether the person is mentally ill and, as a result of such mental illness, is a danger to others or to himself and thus is in need of short-term treatment. The district court ruled that the person alleged to be mentally ill could assert the privilege regardless of whether the psychologist's testimony related to information obtained

from the person during the person's voluntary or involuntary evaluation and treatment and, on that basis, refused to confirm the certification for short-term treatment. The People, through the Mental Health Division of the Department of Institutions, thereafter filed an original proceeding in this court. We stayed the district court's ruling and issued a rule directing the district court to show cause why its ruling should not be vacated. We now make the rule absolute.

## I.

On November 10, 1989, an adult male whom we refer to as J.M. arrived at Adams County Mental Health Center for a regularly scheduled appointment with a mental health therapist. The therapist determined that J.M. was in need of emergency evaluation and, pursuant to section 27–10–105(1)(a), 11B C.R.S. (1989), invoked emergency procedures in order to detain J.M. for a seventy-two-hour evaluation. J.M. was transferred to Fort Logan Mental Health Center for an emergency evaluation. Upon J.M.'s arrival at the mental health center, Doctor Rita R. Vollman, a psychologist, met with him to conduct the evaluation. Doctor Vollman determined that J.M. was suffering from a mental illness and, as a result thereof, was a danger to himself and in need of short-term treatment. Doctor Vollman, pursuant to section 27–10–107, 11B C.R.S. (1989), filed a Notice of Certification and Certification for Short-Term Treatment in the District Court of Adams County. J.M., through court-appointed counsel, moved to dismiss the certification because of a technical violation in the notice filed by Doctor Vollman. The district court granted the motion to dismiss on December 28, 1989, at which time Doctor Vollman initiated another seventy-two-hour emergency evaluation of J.M.

The next day, December 29, 1989, Doctor Vollman again filed a Notice of Certification and Certification for Short-Term Treatment on the basis that, in her opinion, J.M. continued to suffer from a mental illness which rendered him a danger to himself. Doctor Vollman made a check-mark next to the following notation on the certification filed with the court: "The respondent [J.M.] has accepted voluntary treatment; however, reasonable grounds exist to believe (s)he will not remain in a voluntary program." J.M., through his court-appointed counsel, requested that the certification for short-term treatment be reviewed by the court.

The district court conducted a hearing on January 17, 1990. At the outset of the hearing J.M. asserted the statutory psychologist-client privilege in order to prevent Doctor Vollman from testifying about any information obtained by the doctor during the emergency evaluations at Fort Logan Mental Health Center. The People argued that the psychologist-client privilege did not apply to information obtained by a psychologist during a seventy-two-hour emergency evaluation and during the period of involuntary certification prior to a judicial review of the certification.

The district court took testimony from Doctor Vollman for the sole purpose of determining whether J.M. was a voluntary or involuntary patient at Fort Logan Mental Health Center. Doctor Vollman, whose testimony was uncontradicted, testified that she first saw J.M. on November 10, 1989, at the Fort Logan Mental Health Center and that on November 13, 1989, after consulting with another staff psychologist, decided to certify J.M. for short-term treatment. Doctor Vollman further testified that she again came in contact with J.M. in the latter part of December when she became aware that a judicial review of the certification was scheduled later in the month. The doctor met with J.M. on December 27 and 28, and testified, in pertinent part, as follows:

Q. [By attorney for People] ... [W]as [J.M.] at any time at Fort Logan during this period of time on a voluntary basis?

A. No, he was not.

Q. He was under a certification for the entire period of time—[?]

A. That's correct.

Q. ... Dr. Vollman, on the notice of certification that you filed with the

court and Mr. Pearman [J.M.'s counsel], and I have received copies of, you have checked the box that [states], "Respondent has accepted voluntary treatment; however, reasonable grounds exist to believe he will not remain in a voluntary program." Can you explain to the Court why that box was checked[?]

A. Yes. When I interviewed [J.M.] on [December] 27th and 28th, he vehemently insisted on leaving the hospital immediately. When I again interviewed him on the 29th, at which point in time I made a decision to certify him, he vacillated considerably between insisting that he leave the hospital on that day, and at other times agreeing to remain as a voluntary patient but only under certain conditions. And the conditions were that the treatment he was going to receive, he would judge to be effective; and he would also make a decision as to at what point in time he was ready for release.

In my professional opinion he was not able to make those decisions in any fashion. And I also was concerned about his mental ability if he were to be an outpatient at the mental health center; as I was clearly aware that for a period of time [his] mental condition had been inconsistent which had led to a number of hospitalizations, six in the last six months' period of time.

Q. Okay. So it's my understanding that he accepted some voluntary treatment with you. He was not accepting staying at the hospital the entire time that you were speaking of?

A. As I said, he vacillated between refusing to stay as a voluntary patient or agreeing to stay under conditions that I found unacceptable, and I had every reason to believe that he could not participate in a voluntary outpatient or inpatient treatment program.

Q. And you filed a 72–hour mental health hold at that time?

A. I filed it once he was refusing to stay. The following day he both refused to stay, and at other points in time agreed, but only under his conditions; and that's the day on which I certified him.

At the conclusion of Doctor Vollman's testimony, the district court ruled that J.M. could invoke the psychologist-client privilege. The court noted that the statutory privilege contains several exceptions but that there was no such exception for a patient receiving treatment pursuant to certification and that J.M. had a right to assert the privilege regardless of whether he was at Fort Logan Mental Health Center voluntarily or involuntarily.[1] Although the court acknowledged that section 27–10–120(1)(e), 11B C.R.S. (1989), permits a mental health professional to disclose to the court information obtained and records prepared in the course of providing any services under the statutory scheme for the care and treatment of mentally ill persons, the court construed the statute as limiting the disclosure to formal documents that might be essential for certification and not to information obtained by the psychologist during an involuntary emergency evaluation. The court thus refused to confirm the certification and stayed the execution of its ruling pending an original proceeding in this court.

## II.

Statutory privileges are to be strictly construed, and the claimant of the privilege has the burden of establishing the applicability of the privilege in issue. *E.g., People v. District Court,* 719 P.2d 722, 725 (Colo.1986). Recognizing that there are "particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate," § 13–90–107(1), 6A C.R.S. (1987), the General Assembly has

---

1. Subsequent to the court's oral ruling, the People filed a motion for reconsideration. The court conducted the hearing over the telephone and denied the People's motion. The court again made clear in its ruling that J.M. was entitled to invoke the psychologist-client privilege irrespective of whether he was at Fort Logan Mental Health Center voluntarily or involuntarily.

created a psychologist-client privilege, which is set forth in subsection 13–90–107(1)(g) as follows:

A licensed psychologist shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall a licensed psychologist's secretary, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity; nor shall any person who has participated in any psychological therapy, conducted under the supervision of a person authorized by law to conduct such therapy, including but not limited to group therapy sessions, be examined concerning any knowledge gained during the course of such therapy without the consent of the person to whom the testimony sought relates.

The purpose of the psychologist-client privilege is to enhance the effective diagnosis and treatment of emotional, behavioral, and mental disorders by protecting those seeking treatment from the embarrassment and humiliation that might result from the psychologist's disclosure of information obtained from the client in the course of a professional consultation. *Clark v. District Court*, 668 P.2d 3, 8 (Colo.1983). Because the statute creating the privilege prohibits the psychologist from testifying "without the consent" of the client, the privilege created by the statute belongs to the client and can be waived only by the client. The scope of the privilege, again by the express terms of the statute, extends to "any communication made by the client" to the psychologist and to any advice given to the client by the psychologist in the course of the psychologist's professional employment. Section 13–90–107(3), 6A C.R.S. (1987), expressly provides that the privilege does not apply to "psychologists eligible to testify concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S. [plea of not guilty by reason of insanity, assertion of the affirmative defense of impaired condition, or raising of

the defendant's incompetency to proceed]" and further states that "psychologists testifying concerning a criminal defendant's mental condition pursuant to section 16–8–103.6, C.R.S., do not fall under the attorney-client privilege in paragraph (b) of subsection (1) of this section."

The district court, after reviewing the pertinent statutory language of section 13–90–107, correctly remarked that the statute contains no explicit exception to the privilege in instances where the information sought to be disclosed was obtained by the psychologist during the emergency evaluation or treatment of a person who appears to be mentally ill. This analysis of section 13–90–107, however, is not the end of the inquiry. The Colorado Revised Statutes contain a comprehensive statutory scheme relating to the care and treatment of mentally ill persons, §§ 27–10–101 to –129, 11B C.R.S. (1989), and it was the application of that statutory scheme that resulted in J.M.'s involuntary detention and evaluation in this case. It is appropriate, therefore, to look to that statutory scheme for further guidance on whether the psychologist-client privilege was properly applied so as to prohibit Doctor Vollman from testifying to information she obtained from J.M. during the doctor's emergency evaluation of J.M.

### III.

### A.

The declared purposes of Colorado's statutory scheme for the care and treatment of the mentally ill, as set forth in section 27–10–101(1), 11B C.R.S. (1989), include the following: to secure for each person who may be mentally ill such care and treatment as will be suited to the needs of the person and to insure that such care and treatment are skillfully and humanely administered with full respect for the person's dignity and personal integrity; to deprive a person of liberty for purposes of care and treatment only when less restrictive alternatives are unavailable and only when the person's safety or the safety of others is endangered; to provide the fullest measure of privacy, dignity, and other

rights to persons undergoing care and treatment; and to encourage the use of voluntary rather than coercive measures to secure care and treatment for mental illness. The statutory scheme provides that when a person appears to be mentally ill and, as a result of such illness, appears to be an imminent danger to others or to himself, or appears to be gravely disabled, a professional person—that is, a person licensed to practice medicine in Colorado or a psychologist certified to practice in this state, § 27–10–102(11), 11B C.R.S. (1989)—may place the person in a designated facility for a seventy-two-hour emergency evaluation. § 27–10–105(1)(a), 11B C.R.S. (1989).[2] After the evaluation, the person detained may be certified for not more than three months of short-term treatment, provided the following conditions are satisfied:

(a) The professional staff of the agency or facility providing seventy-two-hour treatment and evaluation has analyzed the person's condition and has found the person is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled.

(b) The person has been advised of the availability of, but has not accepted, voluntary treatment; but, if reasonable grounds exist to believe that the person will not remain in a voluntary treatment program, his acceptance of voluntary treatment shall not preclude certification.

(c) The facility which will provide short-term treatment has been designated or approved by the executive director [of the Department of Institutions] to provide such treatment.

§ 27–10–107(1), 11B C.R.S. (1989). When a certification for short-term treatment is filed with the court, the court must appoint an attorney to represent the mentally ill person, and the attorney may request the court to review the certification. § 27–10–107(5) and (6), 11B C.R.S. (1989). Upon request for judicial review of the certification, the court is required to conduct a hearing and determine whether the person or facility seeking to detain the person establishes by clear and convincing evidence that such person is mentally ill and, as a result of such mental illness, is a danger to others or to himself or is gravely disabled. § 27–10–111(1), 11B C.R.S. (1989). "At the conclusion of the hearing, the court may enter or confirm the certification for short-term treatment, discharge the respondent, or enter any other appropriate order, subject to available appropriations." § 27–10–107(6), 11B C.R.S. (1989).

If the certification is confirmed, the person subject to the certification may be detained for a period of not more than three months of treatment. § 27–10–107(1), 11B C.R.S. (1989). This three-month period of treatment, upon further hearing, may be extended for an additional three months. § 27–10–108, 11B C.R.S. (1989). When a mentally ill person has received short-term treatment for five consecutive months, the professional person in charge of the evaluation and treatment may file a petition with the court for long-term care and treatment. § 27–10–109(1), 11B C.R.S. (1989). The court is authorized to issue an order for long-term care and treatment if all the statutory requirements for the order have been satisfied.[3]

2. A peace officer, registered professional nurse, or licensed clinical social worker also may involuntarily detain a person for emergency evaluation when the person appears to be mentally ill and, as a result of mental illness, appears to be an imminent danger to others or to himself, or appears to be gravely disabled. § 27–10–105(1), 11B C.R.S. (1989). In addition, the statutory scheme contains procedures for any individual to petition the court for a court-ordered evaluation of another person when certain conditions are satisfied. § 27–10–106, 11B C.R.S. (1989).

3. Once an individual has received short-term treatment for five consecutive months, the treat-

ing psychiatrist may file with the court a petition for long-term care and treatment, provided the following conditions are satisfied: (a) the professional staff providing short-term treatment has analyzed the individual's condition and has determined that the individual is mentally ill and, as a result, is a danger to others or to himself or is gravely disabled; (b) the person subject to long-term treatment has been advised of, but has refused, voluntary treatment, or will not remain in voluntary treatment; (c) the treating facility has been designated or approved by the Department of Institutions. § 27–10–109(1), 11B C.R.S. (1989). A certification for long-term care and treatment may not exceed six months, but may be extended for additional six-month

In addition to the above procedures, the statutory scheme creates a limited privilege, with a concomitant authorization for limited disclosure, with respect to information obtained and records prepared during the course of an emergency seventy-two-hour evaluation or during short-term or long-term care and treatment. Section 27–10–120(1)(e), 11B C.R.S. (1989) states in this respect as follows:

(1) Except as provided in subsection (2) of this section [observed behavior constituting a criminal offense committed upon the premises of a facility providing mental health services or committed against any person while performing or receiving such services], all information obtained and records prepared in the course of providing any services under this article to individuals under any provision of this article shall be confidential and privileged matter. Such information and records may be disclosed only:

\*    \*    \*    \*    \*    \*

(e) to the courts, as necessary to the administration of the provisions of this article.

## B.

■ Both the structure and text of the statutory scheme for the care and treatment of the mentally ill provide the framework for the proper resolution of this case. The statutory goal of securing for each person who may be mentally ill "such care and treatment as will be suited to the needs of the person," § 27–10–101(1)(a), 11B C.R.S. (1989), clearly contemplates a thorough evaluation of that person's mental condition in order to assess whether that person, by reason of a mental illness, is a danger to others or to himself or is gravely disabled. Without such an evaluation, the statutory goal of providing care and treatment suited to the needs of the mentally ill person would be substantially undermined. In keeping with this statutory goal, section 27–10–120(1)(e) obviously is intended as an authorization for a psychologist to testify to observations concerning an involuntarily

*periods upon court order. § 27–10–109(4) &*

detained person who appears to be mentally ill when the issue before the court is whether the statutory conditions for certification for short-term treatment have been satisfied. *See, e.g., In re Kathleen,* 126 N.H. 379, 493 A.2d 472 (1985) (recognizing that particular circumstances of involuntary commitment proceedings may compel exception to psychologist-patient privilege even though no such exception is included in the statutory privilege); *In the Matter of the Detention of R.,* 97 Wash.2d 182, 641 P.2d 704 (1982) (physician-patient privilege inapplicable in involuntary commitment proceedings where issue is whether further treatment is needed).

■ The disclosure provisions of section 27–10–120(1)(e) are coextensive with the limited privilege created by that section. Since the privilege extends to "all information obtained and records prepared in the course of providing any services under this article to individuals under any provision of this article," it follows that the disclosure provisions are clearly applicable to information obtained and records prepared in the course of an involuntary detention and emergency evaluation. Thus, any such information obtained and records prepared during such involuntary detention and emergency evaluation may be disclosed to the court in the course of a judicial review of short-term certification when such information and records are "necessary to the administration of the provisions of this article" [i.e., the statutory scheme for the care and treatment of mentally ill persons.] Consistent with both the stated purpose of Colorado's statutory scheme for the care and treatment of mentally ill persons and the statutory text of section 27–10–120(1)(e), we accordingly hold that when a court conducts a judicial review of a psychologist's certification for short-term treatment of a person who has been involuntarily detained for an emergency evaluation due to an apparent mental illness, the psychologist-client privilege created by section 13–90–107(1)(g) does not apply to information obtained and records prepared in

*(5), 11B C.R.S. (1989).*

the course of evaluating a person who has been involuntarily detained so long as the court conducting the judicial review determines that such information and records are necessary to an informed decision on whether the statutory conditions for certification have been satisfied and the certification should be confirmed, whether the statutory conditions for certification have not been met and the person involuntarily detained should be discharged, or whether some other appropriate order should be entered.

### C.

We emphasize here that nothing in our construction of 27–10–120(1)(e) is intended to contravene our decision in *People v. Taylor*, 618 P.2d 1127 (Colo.1980). We held in *Taylor* that where a patient sought and received *voluntary* treatment from a psychiatrist, and where the psychiatrist later certified the patient for short-term treatment, the patient properly could assert the physician-patient privilege at a judicial review of the certification in the event the psychiatrist were to be called "to testify about any information [the psychiatrist] acquired in treating the [patient] which was necessary for [the psychiatrist] to prescribe or act for [the patient] during the period of [the patient's] *voluntary* treatment." 618 P.2d at 1140 (emphasis added). We rested our decision in *Taylor* on two policy considerations: first, the rationale underlying the physician-patient privilege, which is to encourage a person seeking medical treatment to make a full disclosure to the physician; and second, the stated purpose of the civil commitment statute, which is to encourage the use of voluntary rather than coercive measures to secure the treatment of mental illness. *Id.*

Neither of the policy considerations present in *Taylor* are implicated here. To be sure, the underlying rationale of the

psychologist-client privilege is similar to that of the physician-patient privilege—that is, to assure those seeking psychological care and treatment that information disclosed to the psychologist will not be disclosed to anyone else. *See Clark*, 668 P.2d at 8. In addition, as *Taylor* expressly recognized, one of the purposes of the civil commitment statute is to encourage the use of voluntary rather than involuntary treatment. *See* § 27–10–101(1), 11B C.R.S. (1989). In the instant case, however, the testimony sought from Doctor Vollman related to information obtained during an emergency evaluation of a person involuntarily detained as a result of an apparent mental illness and not, as in *Taylor*, to information obtained during a voluntary consultation. As section 27–10–120(1)(e) makes clear, information obtained during an emergency evaluation, as well as information obtained during involuntary treatment prior to judicial review of a short-term certification, may be disclosed to the court when necessary for the proper administration of the statutory scheme for the care and treatment of mentally ill persons.[4]

### IV.

The district court upheld J.M.'s invocation of the psychologist-client privilege with respect to information obtained by Doctor Vollman during the period of the emergency detention and evaluation of J.M. at Fort Logan Mental Health Center in November and December 1988. In upholding the privilege, the district court limited the disclosure provision of section 27–10–120(1)(e) to formal documents necessary for certification. For reasons previously discussed, the district court's resolution of the privilege issue cannot be reconciled with Colorado's statutory scheme for the care and treatment of mentally ill persons. Where, as here, a court is required to review a certification for short-term care and

---

**4.** Although J.M. earlier had received voluntary treatment at Adams County Mental Health Center prior to his involuntary detention for emergency evaluation at Fort Logan Mental Health Center, nothing in the record disputes the fact that the testimony which the People sought to elicit from Doctor Vollman concerned informa-

tion obtained from J.M. during J.M.'s involuntary emergency evaluation and detention at Fort Logan Mental Health Center prior to the hearing on Doctor Vollman's certification, and not information related to J.M.'s earlier voluntary treatment at Adams County Mental Health Center.

treatment based on an emergency detention and evaluation of a person who appears to be mentally ill and, as a result of such mental illness, is a danger to others or to himself, the person involuntarily detained may not invoke the psychologist-client privilege so as to prohibit the psychologist from testifying to information obtained and records prepared during the period of emergency evaluation and during the period of certification prior to judicial review of the certification, so long as such testimony is necessary to an informed decision, pursuant to section 27–10–107(1)(b), 11B C.R.S. (1989), on whether the certification should be confirmed, the person detained should be discharged, or some other appropriate order should be entered.

The rule to show cause is made absolute, and the district court is directed to conduct further proceedings consistent with the views herein expressed.