1997 SD 60

**David MAYNARD, Cathy Maynard, and Jon Maynard, son of David and Cathy Maynard, Petitioners and Appellants,**

v.

**Raymond HEEREN, Defendant and Appellee.**

No. 19697.

Supreme Court of South Dakota.

Considered on Briefs March 27, 1997.

Decided May 28, 1997.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry and Michael J. Butler of Butler and Nesson, Sioux Falls, for petitioners and appellants.

Daryl L. Hecht and Steven R. Jensen of Crary, Huff, Inkster, Hecht & Sheehan, North Sioux City, for defendant and appellee.

GILBERTSON, Justice.

[¶ 1.] David, Cathy and Jon Maynard (Maynards) filed an intermediate appeal from the circuit court's discovery order requiring them to provide Raymond Heeren (Heeren) with all psychotherapy records of Cathy Maynard.[1] We affirm with instruction.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] David and Cathy Maynard are the parents of an autistic son, Jon. Heeren allegedly is the leader of a taxpayer group opposed to the expense generated by the Greater Hoyt School District's special education placement of Jon. The Maynards claim that Heeren made false statements about them to Union County taxpayers through solicited telephone calls, newspaper advertisements and media interviews. The Maynards are suing Heeren for negligent misrepresentation, invasion of privacy, slander, and intentional infliction of emotional distress.

[¶ 3.] Through the discovery process, Heeren discovered that Cathy Maynard was seeing a psychotherapist, Dr. Douglas Anderson. Pursuant to the rules of discovery, Heeren moved for production of:

> All progress notes, therapists' notes, reports, correspondence, personality inventory answer sheets, statements for services rendered, files and all other documents and tangible things generated or reviewed by ... [Dr.] Anderson ... in the course of evaluation and treatment of Cathy Maynard.

---

1. Carrie Maynard, daughter of David and Cathy Maynard, voluntarily dismissed out of the case as a plaintiff.

[¶ 4.] When the Maynards failed to provide the requested documents and answers to interrogatories, Heeren filed a motion to compel discovery. Maynards agreed to provide some treatment records, but provided evidence that it was Dr. Anderson's opinion that disclosure of all treatment records and the intensely personal information Mrs. Maynard divulged to him would be detrimental to her treatment. Following a hearing on Heeren's motion to compel, the trial court ordered Mrs. Maynard to turn over the requested information or face dismissal of the Maynards' claims for emotional or mental injury and damage. The Maynards petitioned for an intermediate appeal, which was granted by this Court.

## STANDARD OF REVIEW

[¶ 5.] We review the trial court's rulings on discovery matters under an abuse of discretion standard. *Weisbeck v. Hess,* 524 N.W.2d 363, 364 (S.D.1994) (citing *Aberle v. Ringhausen,* 494 N.W.2d 179, 182–83 (S.D. 1992)). When we are asked to determine whether the trial court's order violated the psychologist-patient confidentiality privilege, however, it raises a question of statutory interpretation requiring de novo review. *Weisbeck,* 524 N.W.2d at 364–65; *see also Delzer v. Penn,* 534 N.W.2d 58, 61 (S.D.1995) (statute construction is question of law fully reviewable).

## LEGAL ISSUE AND ANALYSIS

[¶ 6.] **Whether SDCL 19–13–6 (the physician-patient privilege) prevents the trial court from ordering disclosure of psychological records of a patient whose mental or emotional harm is an element of her claim.**

[¶ 7.] At common law, there was no physician-patient privilege, and therefore no psychotherapist-patient privilege. Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5543 (1989). The proposal for a physician-patient privilege, known as Proposed Rule 504, was not adopted into the Federal Rules of Evidence. *Id.* The Military Rules of Evidence recognize no physician-patient privilege. *Id.* Nevertheless, virtually all 50 states and the District of Columbia have enacted a psychotherapist privilege into law in some form. *Jaffee v. Redmond,* —— U.S. ——, —— n. 11, 116 S.Ct. 1923, 1929 n. 11, 135 L.Ed.2d 337, 346 (1996) (listing statute citations).[2]

[¶ 8.] Every privilege limits the evidence available in the judicial fact-finding process. *State v. Jaques,* 256 N.W.2d 559, 564 (S.D.1977) (Zastrow, J., concurring specially). This disadvantage is balanced against the public policy argument in favor of the privilege:

> The physician-patient privilege expresses a long-standing policy to encourage uninhibited communication between a physician and his patient. It is a privilege that seeks to insure the free flow of health care, absent any fears on the patient's part that anything he says might later be used against him.

*People ex rel. D.K.,* 245 N.W.2d 644, 648 (S.D.1976) (internal citation omitted).

[¶ 9.] The psychotherapist privilege in South Dakota is encompassed within the physician-patient privilege contained in SDCL 19–13–7: "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his ... mental or emotional condition[.]" A communication is confidential:

> if not intended to be disclosed to third persons, except persons present to further the interest of patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or persons who are partic-

---

**2.** In *Jaffee,* the Supreme Court for the first time recognized a judicially made psychotherapist privilege under the umbrella of FRE 501, which permits the Court to define new privileges by "interpreting common law principles ... in the light of reason and experience." —— U.S. at ——, 116 S.Ct. at 1927, 135 L.Ed.2d at 343. The Court noted the various state statutes and decided to create the privilege on that basis that "it is appropriate to treat a consistent body of policy determinations by state legislatures as reflecting both 'reason' and 'experience.'" —— U.S. at ——, 116 S.Ct. at 1930, 135 L.Ed.2d at 347.

ipating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

SDCL 19–13–6.

[¶ 10.] It is generally recognized that the psychotherapy privilege can be waived by the patient. *Jaffee,* —— U.S. at ——, n. 14, 116 S.Ct. at 1931, n. 14, 135 L.Ed.2d at 348, n. 14. We have provided court rules for waiver of the physician-patient privilege in South Dakota, including SDCL 19–13–11, cited by both parties as applicable to the case at bar. SDCL 19–13–11 provides:

> There is no privilege under § 19–13–7 as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

SDCL 19–13–11 speaks only to proceedings where the mental or emotional condition is an *element.* Mental and emotional harm is an element of two of the causes of action in the Maynards' complaint—invasion of privacy[3] and intentional infliction of emotional distress.[4]

[¶ 11.] There exists a second statutory waiver of the physician-patient privilege which we conclude also applies in the instant case.[5] SDCL 19–2–3 provides, in part:

> In any action or proceeding or quasi-judicial administrative proceeding, whenever the physical or mental health of any person is in issue, any privilege under § 19–13–7 shall conclusively be deemed to be waived at trial or for the purposes of discovery under chapter 15–6 if such action or proceeding is civil in nature[.]

Even if the emotional and mental state of Mrs. Maynard is not an element of the Maynards' claims for their other two causes of action, i.e., slander and negligent misrepresentation, the alleged mental harm must be used to prove up the element of injury required in both.[6] The Maynards in their claim for damages request compensatory damages of $250,000 plus medical bills and punitive damages for slander and intentional infliction of emotional distress. Certainly the alleged emotional suffering of Mrs. Maynard

---

**3.** We have defined the common law action of invasion of privacy as: "[t]he unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Krueger v. Austad,* 1996 SD 26 ¶ 33, 545 N.W.2d 205, 215–16 (*citing Truxes v. Kenco Enterprises, Inc.,* 80 S.D. 104, 119 N.W.2d 914, 916 (S.D.1963) (emphasis added)).

**4.** Four elements are necessary to establish a prima facie case of intentional infliction of emotional distress:
> 1. An act by defendant amounting to extreme and outrageous conduct; 2. Intent (or recklessness) on the part of the defendant to cause plaintiff severe emotional distress; 3. The defendant's conduct was the cause-in-fact of plaintiff's distress; and 4. The plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Reeves v. Reiman,* 523 N.W.2d 78, 83 (S.D.1994) (citing *Tibke v. McDougall,* 479 N.W.2d 898, 906 (S.D.1992) (emphasis added)).

**5.** These are two commonly recognized exceptions to physician-patient privilege known as the patient-litigant exceptions. One covers cases where the mental condition is evidence of the element (as codified at SDCL 19–2–3) and the second where the condition itself is the fact (element) to be proved (as codified at SDCL 19–13–11). *Wright & Graham,* § 5543.

**6.** *See* SDCL 20–11–4, which provides in part, "Slander is a false and unprivileged publication, other than libel, which: ... By natural consequence, causes *actual damage.*" (Emphasis added.)

> To prove negligent misrepresentation, claimant must prove knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will ... be *injured in person* or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information and the other giving the information owes a duty to give it with care.

*Rumpza v. Larsen,* 1996 SD 87, ¶ 19, 551 N.W.2d 810, 814 (*citing Swanson v. Sioux Valley Empire Elec. Ass'n,* 535 N.W.2d 755, 757 (S.D.1995) (emphasis added)).

is evidence in their proof of damages, especially in the consideration of punitive damages. Because SDCL 19–13–11 and 19–2–3 apply, we address both statutes in responding to the issue raised by the Maynards.

[¶ 12.] The patient-litigant exceptions of SDCL 19–13–11 and 19–2–3 are grounded in the theory that when a patient makes a claim or defense in litigation on the basis of the patient's condition, it would be unjust to deny the other party an opportunity to show the invalidity of that claim or defense. *Wright & Graham,* § 5543. An additional justification for the exception has been explained as follows:

> [O]ne may be suspicious that the [physician-patient] privilege is being corrupted as an instrument for the suppression of truth when the patient invokes it to close the mouth of the one person in the best position to support his claims if they were true.

*Id.* The general rule is that unless there is a privilege, all relevant evidence is discoverable. SDCL 15–6–26; *Kaarup v. St. Paul Fire & Marine Ins.,* 436 N.W.2d 17, 20 (S.D. 1989).

[¶ 13.] When a statute's language is clear, certain and unambiguous, our interpretation is confined to declaring its meaning as plainly expressed. *In re Certification of a Question of Law (Wiersma),* 1996 SD 16, ¶ 6, 543 N.W.2d 787, 790. Since we construe statutes according to their intent, the intent must be determined from the statute as a whole, as well as other statutes relating to the same subject. *U.S. West Communications, Inc. v. Public Utils. Comm'n,* 505 N.W.2d 115, 123 (S.D.1993). SDCL 19–13–11 and 19–2–3 clearly relate to the same subject—waiver of physician-patient privilege by a patient-litigant. The plain language of both SDCL 19–13–11 and 19–2–3 is clear, certain and unequivocal, and those statutes when read together show the waiver of privilege was intended to be absolute as to discovery of relevant evidence.

There is *no* privilege under § 19–13–7 as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

SDCL 19–13–11 (emphasis added).

In any action or proceeding or quasi-judicial administrative proceeding, whenever the physical or mental health of any person is in issue, any privilege under § 19–13–7 shall *conclusively* be deemed to be waived at trial or for the purposes of discovery under chapter 15–6 if such action or proceeding is civil in nature[.]

SDCL 19–2–3 (emphasis added).

[¶ 14.] The words "no" and "conclusively" were placed in these evidentiary rules for a reason. When we interpret a statute or court rule, "[n]o wordage should be found to be surplus. No provision can be left without meaning. If possible, effect should be given to every part and every word." *Cummings v. Mickelson,* 495 N.W.2d 493, 500 (S.D.1993) (internal citations omitted). Because the language of this statute and evidentiary rule is clear and unambiguous, we assume that this Court and the Legislature at the time they adopted the patient-litigant exceptions meant what they said and said what they meant. *Miller v. Hernandez,* 520 N.W.2d 266, 269 (S.D.1994).

[¶ 15.] We hold that the waiver of privilege contained in SDCL 19–13–11 and 19–2–3 gives the party seeking disclosure an absolute right of access to the privileged material. While the access may be absolute, this does not limit the sound discretion of the trial court in placing reasonable restrictions upon dissemination and use of the sought-after material. The party seeking to oppose discovery has the right to an *in camera* hearing to determine whether the material is relevant.[7] The party seeking to invoke the

---

7. The trial court in this case was of the view that it was not professionally qualified to review the psychotherapist's file and thus declined to hold an in camera review. Because the only issue at this point is that of relevancy, which is a legal determination, the trial court is the only individual with the authority to make that determination. As this is an intermediate appeal, when the case is remanded to the trial court for the balance of the proceedings, the trial court is in-

privilege may file a motion for protective order under SDCL 15–6–26(c) or objections to discovery pursuant to SDCL 15–6–33(b) and 15–6–34(b). In order to allow this Court to fully review the decision of the trial court, the in camera hearing must be held in the presence of both parties, both parties must have access to the contested information, and both parties must be allowed to make their record.[8]

 [¶ 16.] Full disclosure under SDCL 19–13–11 and 19–2–3 does not leave the patient-litigant totally vulnerable and at the mercy of the discovering party for the balance of the case and thereafter. The trial court has the power to protect privileged information not subject to the waiver. Under its inherent authority "to do all things that are reasonably necessary for the administration of justice within the scope of [its] jurisdiction," *In re Reif*, 478 N.W.2d 815, 819 (S.D.1991), the trial court may order that the inadmissible contents of any records be sealed[9] and that the adversarial party be prevented from revealing them to anyone. The parties in the instant case agreed that the records should be sealed pending the outcome of this intermediate appeal. Motions in limine prior to trial would offer further protection against unnecessary public disclosure. In the exercise of its discretion in this area, the trial court will be faced with situations where the privilege is invoked as a

shield when the nondisclosure of the information and the conditions it protects are being used as a sword. Such is the case now before us. Clearly, heightened care must be exercised in other instances to avoid abuse or improper disclosure where the material pertains to an involuntary defendant rather than a voluntary plaintiff.

[¶ 17.] Existing law also provides an enforcement tool to assure that no privileged information is misused by the discovering litigant. The public disclosure of irrelevant confidential material by a discovering party would appear to us to be a prima facie violation of Rule 11. SDCL 15–6–11. If such disclosure is not necessary for litigation purposes, it would appear on its face to be for the improper purpose of harassment or embarrassment of the other party. SDCL 15–6–11(a). Rule 11 provides a deterrent to misuse by both the discovering attorney and litigant, since its sanctions can be imposed on the offending attorney, party or both. SDCL 15–6–11(b).

 [¶ 18.] We agree with other courts that the waiver of the privilege for litigation purposes does not waive the privilege in its entirety. *Samms v. District Court, Fourth Jud. Dist.*, 908 P.2d 520 (Colo.1995) (extent of waiver depends on facts; some or all discussions remain subject to privilege); *Ulibarri v. Superior Court ex rel County of Coconino*, 184 Ariz. 382, 909 P.2d 449 (App.

---

structed to conduct an in camera hearing unless waived by the party opposing discovery.

**8.** If there is opposition to disclosure, the party opposing disclosure must make specific objections to specific portions of the file. General objections to the entire file or large portions of it are not appropriate to allow the trial court to perform its required task of analyzing a specific objection to a specific document.

**9.** Even this may be unnecessary under Court Rule No. 97–1, which goes into effect July 1, 1997 and is codified at SDCL 15–6–5(g):

No depositions (except notices to take depositions), interrogatories, requests for documents, requests for admissions, and answers and responses thereto shall be filed with the clerk of the court.

Any discovery materials necessary for the disposition of any motion filed with the court shall be attached as an exhibit and filed with the party's motion.

If any party designates any or all of any deposition as evidence to be offered in the trial of any case, such deposition shall be filed with the clerk of the court at the same time as that party's designation.

Depositions used by a party only for the purpose of contradicting or impeaching the testimony of deponent as a witness, pursuant to § 26–6–32(a)(1), shall not be filed unless otherwise ordered by the judge presiding at the hearing or trial.

All depositions which have been read or offered into evidence by agreement of parties, or at the trial or submission of the case to the court, shall become a permanent part of the file.

After the ultimate conclusion of the case, depositions not offered or received into evidence may be withdrawn by the parties taking the deposition. All unclaimed depositions may be disposed of by the clerk after giving thirty days' notice to the attorneys of record of the clerk's intention to do so.

1995) (scope of waiver limited only to those communications concerning specific condition at issue); *Palay v. Superior Court,* 18 Cal. App.4th 919, 22 Cal.Rptr.2d 839 (1993) (mother's prenatal records not privileged, but privilege retained as to rest of her medical history); *McGowan v. O'Neill,* 750 S.W.2d 884 (Tex.App.1988) (trial court discovery order overbroad; failed to incorporate safeguards allowing plaintiff to preserve physician/patient privilege with respect to nonrelevant communications or records). This interpretation is supported by the limiting language of our waiver statutes: SDCL 19–13–11 ("communication *relevant* to an issue") and SDCL 19–2–3 ("waived *at trial* or for the *purposes of discovery*") (emphasis added). The information deemed not be relevant to trial remains privileged.

[¶ 19.] We hold that the waiver of privilege in this case under SDCL 13–2–3 and 13–3–11 is absolute as to an opposing party in this litigation, and remand to the trial court for action consistent with this opinion.[10]

[¶ 20.] MILLER, C.J., and SABERS, J., concur.

[¶ 21.] AMUNDSON and KONENKAMP, JJ., concur in part and dissent in part.

KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 22.] How much of one's innermost secrets must be exposed when mental and emotional state become an issue in a lawsuit? In ordering virtually unlimited access to all records, I believe the *circuit court abused its discretion* by failing to oversee a process of allowing pertinent disclosure. Now the majority endorses the error by announcing a rule of "absolute" access to a patient's psychotherapy records. While I generally concur with the Court's analysis of privilege waiver under SDCL 19–2–3 and 19–13–11, I wholly disagree with its inadequate treatment of what becomes discoverable following waiver. Only relevant material is accessible. Moreover, the majority today announces a process for *in camera* review in which a person's psychotherapy records will be scrutinized by all parties, before the trial court ever rules on its discoverability.

[¶ 23.] Two themes predominate in this appeal: (1) the waiver of psychotherapist-patient privilege, and (2) the rational scope and purpose of discovery. On the first question, "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition...." SDCL 19–13–7 (FedREvid 503(b)). In the past, we have recognized the importance of this privilege:

> South Dakota has "a long-standing public policy to encourage uninhibited communication between a physician and his patient." ... If a patient knows that the privilege is fraught with exceptions, she is liable to withhold information or avoid therapy altogether. 2 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 7.02 (2d ed 1993).

*Weisbeck v. Hess,* 524 N.W.2d 363, 365 (S.D.1994)(quoting *Hogue v. Massa,* 80 S.D. 319, 123 N.W.2d 131, 133 (S.D.1963)). Other courts have concluded similarly: the public interest is "served by encouraging individuals to seek help and treatment for both mental and physical illness." *Ex Parte Rudder,* 507 So.2d 411, 415 (Ala.1987). Any encroach-

---

**10.** The author of the special writing finds fault with the opinion of this Court as being absolutist. Similar phrases such as "encroachment upon the privilege," " 'carte blanche' disclosure," "indiscriminate disclosure," "casual breach by every litigant in a single-minded pursuit of the last scrap of evidence," and "the sanctity of one's thoughts ought not be rummaged over merely to collect every existing dollop of intrusive detail," are also found. Declining to return fire in kind, we simply note this Court is engaging in nothing more than statutory construction of SDCL 19–13–11 and 19–2–3. Rather than contest the Court's statutory analysis of these two code sec-

tions, the special writer brings forth a collection of case law from other jurisdictions (with different privilege waiver statutes or evidentiary rules), legal treatises and law reviews. Unfortunately the special writing devotes two sentences of its ten pages of text to SDCL 19–13–11 and 19–2–3, which are controlling in this State. While the theories advanced by the special writing are a well authored plea for a change from the status quo, it is our task to ascertain what our statutes and evidentiary rules say, not what they could have said or should have said. *In re AT & T Info. Sys.,* 405 N.W.2d 24, 27 (S.D.1987).

ment upon the privilege should be made with caution, as the very basis of treatment depends upon the "free and complete disclosure of all thoughts and feelings of a patient," a process significantly thwarted when the privilege is unnecessarily transgressed. *Dossey v. Salazar,* 808 S.W.2d 146, 148 (Tex.App. 1991). More than the confidentiality covering purely medical information, the psychotherapeutic privilege protects "those seeking treatment from the embarrassment and humiliation that might result from the psychologist's disclosure of information obtained from the client in the course of a professional consultation." *People v. Dist. Ct., County of Adams,* 797 P.2d 1259, 1263 (Colo.1990).

[¶ 24.] With the delicate and personal nature of the information divulged in therapy, courts should be cautious when considering a demand for total revelation.

> Effective psychotherapy ... depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. As the Judicial Conference Advisory Committee observed in 1972 when it recommended that Congress recognize a psychotherapist privilege as part of the Proposed Federal Rules of Evidence, a psychiatrist's ability to help her patients
>
>> is completely dependent upon [the patient's] willingness and ability to talk freely. This makes it difficult, if not impossible, for [a psychiatrist] to function without being able to assure ... patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ... there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment. Advisory Committee's Notes to Proposed Rules, 56 FRD 183, 242 (1972) (quoting Group

for Advancement of Psychiatry, Report No. 45, Confidentiality and Privileged Communication in the Practice of Psychiatry 92 (June 1960)).

*Jaffee v. Redmond,* 518 U.S. ——, ——, 116 S.Ct. 1923, 1928–29, 135 L.Ed.2d 337, 345 (1996). "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at ——, 116 S.Ct. at 1929, 135 L.Ed.2d at 345–46.

[¶ 25.] Unquestionably, the privilege is waived under what is often called the "patient-litigant" exception. Yet discovery must still be limited to *relevant* communications between patient and therapist when a mental or emotional condition arises as an element of a claim or defense. SDCL 19–13–11 (Fed. R.Evid. 503(d)(3))(emphasis added); *see* SDCL 19–2–3; 2 S. Stone & R. Taylor, *Testimonial Privileges* § 7.23 (2d ed 1995). The trial court simply ordered wholesale disclosure of Maynard's records, without regard to what might be relevant to the claims involved here. Admittedly, our rules permit expansive discovery:

> The scope of pretrial discovery is, for the most part, broadly construed. *Bean v. Best,* 76 S.D. 462, 80 N.W.2d 565 (1957). SDCL 15–6–26(b) provides, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." A broad construction of the discovery rules is necessary to satisfy the three distinct purposes of discovery: (1) narrow the issues; (2) obtain evidence for use at trial; (3) secure information that may lead to admissible evidence at trial.

*Kaarup v. St. Paul Fire and Marine Ins. Co.,* 436 N.W.2d 17, 19 (S.D.1989)(citing 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2001 (1970)). Nonetheless, while not limited in scope to only the admissible, discovery requests must be "reasonably calculated to lead to the discovery of admissible evidence." SDCL 15–6–

2(b). No overbroad or "carte blanche" disclosure, unduly burdensome or lacking in specificity, should be allowed. *Lopez v. Huntington Autohaus Ltd.*, 150 A.D.2d 351, 540 N.Y.S.2d 874, 876 (1989).

[¶ 26.] Discovery of medical information has long been protected, even after waiver. "[T]he legitimate interest in the privacy of the physician-patient relationship should not be subject to casual breach by every litigant in a single-minded pursuit of the last scrap of evidence which may marginally contribute to victory in litigation." 1 J. Strong, *McCormick on Evidence* § 105 (4th ed 1992); *see Harlan v. Lewis*, 141 F.R.D. 107, 112 (E.D.Ark.1992), *aff'd*, 982 F.2d 1255 (8th Cir. 1993); *Davis v. Superior Court (Williams)*, 7 Cal.App.4th 1008, 9 Cal.Rptr.2d 331, 335 (1992)("only discovery *directly relevant* to the plaintiff's claim and essential to the fair resolution of the lawsuit"); *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind.1990)(in spite of waiver "information which is unrelated to the condition in issue and irrelevant to the cause remains privileged and therefore protected from discovery") (citations omitted); *Linton v. City of Great Falls*, 230 Mont. 122, 749 P.2d 55, 62–63 (1988)(waiver inapplicable to "any treatment or condition not related to the action" and only waives privilege to extent information is "relevant" to claim); *Wachtman v. Trocaire College*, 143 A.D.2d 527, 532 N.Y.S.2d 943, 944 (1988)(scope of discovery after waiver is limited and "does not permit discovery of information involving unrelated illnesses or treatment"); *see generally State v. Stuck*, 434 N.W.2d 43, 54 (S.D.1988)(medical records not relevant or material not discoverable); *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984), *overruled on other grounds* 827 S.W.2d 833 (Tex.1992)(permissible scope of discovery includes "anything reasonably calculated to lead to the discovery of material evidence," but overbroad requests amounting to harassment exceed the scope).

[¶ 27.] If medical information warrants vigilance, then the sanctity of one's thoughts ought not be rummaged over merely to collect every existing dollop of intrusive detail. Privilege waiver does not mandate all-inclusive disclosure. On the contrary, note Weinstein:

A party may waive the privilege by placing his or her medical condition at issue. For example, a claim for mental pain and suffering waived protection of the psychotherapist-patient privilege because the claim put the patient's mental condition at issue. A waiver will be found *at least where the information sought is not an "unlimited" exposure of psychotherapist-patient communications, and is in fact closely tailored to the time period and subject matter of the claim.*

3 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 504.07[8] (2d ed. 1997)(emphasis added). Here, the trial court took no heed that overbroad discovery might reveal information wholly irrelevant to the issues. Indiscriminate disclosure of all records, notes, and private communications in a psychotherapist's file intrudes upon the sanctity of the patient's mind, potentially exposing matters destructive to mental health. Although abuse of discretion is a demanding standard of review to overcome, *State v. Dreps*, 1996 SD 142, ¶ 8, 558 N.W.2d 339, 341, a patient's hallowed right to preserve private and unrelated matter from disclosure, as well as the relatively simple options available to trial judges for overseeing discovery, make the court's refusal to exercise its supervisory power a decision against reason and evidence.

[¶ 28.] In this case, the court should have arranged for an *in camera* review of Maynard's records to ensure only information relevant to the claim against Heeren came to light. We have noted, "[w]hen an individual makes the courageous choice to seek help, confidentiality begins. This Court should not discourage such courage." *Weisbeck*, 524 N.W.2d at 366. An *in camera* review to seclude from hostile eyes irrelevant but private and possibly volatile material shows appropriate deference to the public policy supporting mental health. This Court has encouraged *in camera* proceedings as a legitimate process to sever out nondisclosable information. *Id.* at 373 (Miller, C.J., concurring in part and concurring in result in part)(making all information discoverable and waiting until after disclosure to decide relevancy "undermines the privilege to the

point of destroying it"); *Kaarup*, 436 N.W.2d 17 (*in camera* examination key in reviewing attorney-client information to redact privileged parts); *State v. Layton*, 337 N.W.2d 809 (S.D.1983)(*in camera* review of statements for discoverable information proper). Such a process is especially appropriate in this case, as a substantial privacy interest is at stake. Other courts have found such a step necessary. *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581, 102 Ill.Dec. 172, 191, 499 N.E.2d 952, 971 (1986)(state has significant interest in "safeguarding the privacy rights of individual patients"); *Anker v. Brodnitz*, 98 Misc.2d 148, 413 N.Y.S.2d 582, 586 (Sup.Ct. 1979)(court supervision of discovery in case where mental health was element of claim gives patient opportunity to object to disclosure of information that is "remote, irrelevant, or otherwise improper"); *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41, 46 (1990)(in medical malpractice case, "formal discovery procedures enable defendants to reach all relevant information while simultaneously protecting the patient's privacy by ensuring supervision over the discovery process, via presence of counsel or judicial intervention, if warranted"); *International Surplus Lines v. Wallace*, 843 S.W.2d 773, 776 (Tex.App.1992)(vacating broad disclosure order; nature of material should be determined before blanket order granted); *Dossey*, 808 S.W.2d at 148 ("Thus, the holding of an *in camera* review of the [psychotherapy] records prior to the order was proper; however, [the judge] clearly abused his discretion by subjecting *all* of the [patient's] psychological records to discovery since even in the interest of broad discovery, no privilege should be totally ignored."); 1 *McCormick on Evidence* § 105 (some states rest privilege screening in hands of court; such practice "would not only allow protection of privacy against trivial intrusion but would draw from the privilege the threat of injustice which it has long carried"); *see generally Owen*, 563 N.E.2d at 608 (advising *in camera* inspection of privileged materials to prevent overbroad discovery); 23 Am.Jur.2d *Depositions and Discovery* § 29 (1983 & 1996 Supp.)(*in camera* inspection is appropriate to excise parts of requested information not discoverable).[11]

[¶ 29.] Courts are empowered to prohibit exposure of extraneous information that may subject a patient to unnecessary "annoyance, embarrassment, oppression, or undue burden or expense." SDCL 15–6–26(c)(authorizing protective orders); *Nelson v. Lewis*, 130 N.H. 106, 534 A.2d 720, 722 (1987)(even in a waiver situation, only evidence relevant to a claim is discoverable, and "the patient waives the privilege only to the extent necessary to provide essential information"). Proper supervision under the rules enables "a trial court to exercise 'broad discretion to manage the discovery process in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants the maximum protection against harmful side effects....'" *Bond v. Dist. Ct., In & For Denver Cty.*, 682 P.2d 33, 40 (Colo.1984)(quoting 4 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 26.6.7 (1983)); *In re Lifschutz*, 2 Cal.3d 415, 85 Cal.Rptr. 829, 844, 467 P.2d 557, 572 (1970)(even when privilege is waived, protection order and pre-discovery inquiry into materials are appropriate to "safeguard the privacy of the patient"); *Mead v. Salter*, 566 N.E.2d 577, 582 (Ind.Ct.App.1991)(information unrelated to condition and injury remains privileged despite waiver). This protective mindset, along with the public policy reasons behind carefully conducted privilege-waiver discovery, mandates that an *in camera* hearing should have been held in this case to exclude matters having nothing to do with the issues. *See generally Duquette v. Superior Court*, 161 Ariz. 269, 778 P.2d 634, 637 (Ct.App.1989)(privilege waivers best considered under the formal methods of discovery).

[¶ 30.] Despite the clear mandate in our statutes and a nationwide trend to limit dis-

**11.** In actions involving review of information falling under the attorney-client privilege, *in camera* review has been held to be a proper method for judging discoverability. *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 548 (2d Cir.1991); *In re Grand Jury*, 906 F.2d 1485, 1492 (10th Cir.1990).

covery to relevant material, this Court approves "absolute" access to a patient's psychotherapy records.[12] Without citing any authority whatsoever, the majority simply proclaims that during an *in camera* review "both parties must have access to the contested information." This makes *in camera* review meaningless. Only the court should examine material claimed to be nondiscoverable to determine first if it should be disclosed.[13] No less than the other freedoms we possess, our innermost thoughts and feelings deserve refuge from senseless intrusion.

The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfaction of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations.

*Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928)(Brandeis, J., dissenting). In this age when privacy seems ever more difficult to preserve and discovery abuse tarnishes the integrity of our civil justice system, I would reverse and remand with instructions to the trial court to conduct an *in camera* relevancy review of Maynard's psychotherapy records

before those records are inspected by her opponent.

[¶ 31.] AMUNDSON, J., joins this dissent and I am hereby authorized to so state.

12. In 1993 the Federal Rules of Civil Procedure were amended in pertinent part as follows: "(5) Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." (Emphasis added).

13. The following reflects a compilation of various court rules from other jurisdictions setting forth a procedure for *in camera* inspection: If an objection is made on a claim of privilege, the burden is on the objecting party to request an *in camera* inspection and to provide the documents for review. The request should contain the factual and legal basis to support the claimed privilege or explain how the privilege though waived makes the material nonetheless irrelevant for dis-

covery purposes. The objecting party should review the documents and note with specificity any portions to which the claimed privilege does not apply. The objecting party should provide the documents to the judge presiding in the case, enclosed in a sealed and labeled container accompanied by an explanatory cover letter. The cover letter should identify file number and caption of the proceeding and explain the nature of the sealed materials, without compromising its essential secrecy. The container should be marked "IN CAMERA REVIEW" in bold print. Each page for which a privilege or relevancy objection is asserted shall be marked "privileged" or "irrelevant" or both. When the court opens this container it should isolate the materials it deems not discoverable and reseal it leaving the discoverable materials unsealed. Without revealing the specific nature of the nondiscoverable material the court should explain its ruling on the record for the benefit of the parties. The sealed material should be filed with the clerk so that it may be later available for appellate review. *See, e.g., Beard v. Middle Tennessee Home Health Service*, 144 F.R.D. 340 (E.D.Tenn.1992).