HAZEL MARIE CRIST v. ROBERT C. MOFFATT, M.D.

No. 69PA89

(Filed 1 March 1990)

**1. Appeal and Error § 6.2 (NCI3d)— malpractice—contact with nonparty treating physicians—remedial order—appealable**

Although defendant's appeal was interlocutory, the Supreme Court elected to hear the matter on the merits under the authority of North Carolina Constitution, article IV, § 12(1), because of the importance of the question presented.

**Am Jur 2d, Appeal and Error §§ 50, 53, 55, 62.**

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

2. **Evidence § 14 (NCI3d) — malpractice action — ex parte interview with nonparty treating physician**

Assuming that the plaintiff in a medical malpractice action impliedly waived her physician-patient privilege by her pretrial conduct, the trial court correctly found that defense counsel acted improperly by privately contacting and discussing plaintiff's medical care and treatment with plaintiff's nonparty treating physicians. Considerations of patient privacy, the adequacy of formal discovery devices, and the untenable position in which *ex parte* contact places the nonparty physician supersede defendant's interest in a less expensive and more convenient method of discovery. Defense counsel may not interview plaintiff's nonparty treating physicians privately without plaintiff's express consent; defendant must instead utilize the statutorily recognized methods of discovery enumerated in N.C.G.S. § 1A-1, Rule 26.

**Am Jur 2d, Depositions and Discovery §§ 29, 70, 132; Witnesses § 233.**

3. **Trial § 9 (NCI3d); Rules of Civil Procedure § 26 (NCI3d) — medical malpractice action — ex parte interview with nonparty treating physician — remedial order — within the authority of the court**

The trial court did not err in a medical malpractice action by requiring defense counsel to fully disclose the substance of all private conversations between defense counsel and plaintiff's nonparty treating physicians even though defendant contended that this forced him to reveal his work product. The order was remedial in purpose and effect and within the broad, inherent, discretionary power of the trial court to control the course of a trial so as to prevent injustice to a party.

**Am Jur 2d, Depositions and Discovery §§ 29, 70, 132; Witnesses § 233.**

ON discretionary review of a decision of the Court of Appeals, reported at 92 N.C. App. 520, 374 S.E.2d 487 (1988), dismissing defendant's appeal from an order entered by *Hyatt, J.*, on 10 February 1988 in Superior Court, BUNCOMBE County. Heard in the Supreme Court 14 November 1989.

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

*DeVere C. Lentz, Jr., P.A., by Shirley H. Brown, and Tharrington, Smith & Hargrove, by Elizabeth F. Kuniholm, for plaintiff-appellee.*

*Roberts Stevens & Cogburn, P.A., by Isaac N. Northup, Jr., for defendant-appellant.*

*Tharrington, Smith & Hargrove, by Elizabeth F. Kuniholm, for North Carolina Academy of Trial Lawyers, amicus curiae.*

*Poyner & Spruill, by John R. Jolly, Jr., Mary Beth Johnston, and Robert O. Crawford III, for North Carolina Association of Defense Attorneys, amicus curiae.*

*Tuggle Duggins Meschan & Elrod, P.A., by Joseph E. Elrod III, Sally A. Lawing, and J. Reed Johnston, Jr., for North Carolina Society of Obstetricians and Gynecologists, amicus curiae.*

WHICHARD, Justice.

Plaintiff filed this medical malpractice action on 4 December 1986, alleging in her complaint that defendant performed surgery on her and rendered post-operative treatment to her in a negligent manner, causing injury, pain and suffering, and damages. After answering, defendant served plaintiff with interrogatories and requests for all medical bills incurred by plaintiff as a result of defendant's allegedly negligent acts. Plaintiff complied, producing among others the records of her treatment by Dr. James W. Tyson and Dr. F. Alan Thompson. In her supplemental answer to defendant's interrogatories she identified Dr. F. Alan Thompson and Dr. James W. Tyson as physicians who "will testify as to facts and circumstances" of their treatment of plaintiff prior to surgery.

Defendant deposed plaintiff on 6 July 1987 and questioned her about the treatment rendered by nonparty treating physicians, including Drs. Thompson and Tyson. On or about 23 November 1987 defendant's attorney, Isaac N. Northup, Jr., met privately with Dr. Tyson to discuss his treatment of plaintiff. Dr. Tyson later told plaintiff's attorney that Mr. Northup had assured him that plaintiff had waived her physician-patient privilege. *See* N.C.G.S. § 8-53 (1986). Upon being questioned by plaintiff's attorney, Mr. Northup advised that he also had met with Dr. Thompson, on or about 19 November 1987. A letter from Dr. Thompson to plaintiff's attorney stated: "It was also my understanding at the time the discussion took place that the physician-patient privilege had

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

been waived under the new law." At oral argument Mr. Northup confirmed that he had advised both physicians that plaintiff had waived the privilege.

Plaintiff filed a motion to compel disclosure of defendant's attorney's private conversations with plaintiff's nonparty treating physicians. In addition, plaintiff requested that the court prohibit the use at trial of any information obtained during the private conversations and prohibit any further *ex parte* contact with non-party treating physicians. The trial court entered an order containing the following pertinent findings, conclusions, and orders:

11. The plaintiff has not expressly waived and did not expressly waive prior to November 19, 1987, and November 23, 1987, the physician/patient privilege conferred by N.C.G.S. 8-53.

12. No resident or presiding judge, either at trial, this matter not having been called for trial, nor prior to trial during the course of discovery, has entered an order compelling disclosure pursuant to N.C.G.S. 8-53.

13. No resident or presiding judge has entered an order finding that plaintiff has waived any physician/patient privilege by providing, in response to formal requests for discovery, copies of her medical records, by testifying concerning her medical treatment at her deposition, by identifying Dr. F. Alan Thompson and Dr. James Tyson as witnesses who would testify concerning their medical treatment of plaintiff, and by not objecting to the deposition of any non-party treating physician.

Based upon the foregoing findings of fact the court concludes as a matter of law that the conduct of Isaac N. Northup, Jr. in privately contacting and discussing plaintiff's medical care and treatment with Dr. James Tyson and Dr. F. Alan Thompson, non-party treating physicians, without the plaintiff's knowledge and consent, although in good faith, was not proper.

Now, therefore, it is ordered, adjudged and decreed as follows:

1. The defendant's attorneys shall fully disclose within fifteen (15) days of the date of this order, in written form, the substance of all private conversations between the defendant's attorneys and non-party treating physicians;

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

2. Defendant's attorneys shall not contact non-party treating physicians without the knowledge and consent of plaintiff's attorney or, alternatively, without an order of the court;

3. The presiding trial judge shall rule upon the use at trial of any information and/or opinions obtained as a result of private conversations between the defendant's attorneys and non-party treating physicians[.]

\* \* \*

Defendant appealed from this order, conceding that his appeal was interlocutory, but arguing that the order affects a substantial right. The Court of Appeals dismissed the appeal, stating: "We do not perceive that Judge Hyatt's order deprived defendant of any right, substantial or otherwise." *Crist v. Moffatt*, 92 N.C. App. 520, 523, 374 S.E.2d 487, 488 (1988). We allowed discretionary review on 8 June 1989.

[1] While an appeal may not be taken from an interlocutory order unless the order affects a substantial right — N.C.G.S. § 1-277(a) (1983); N.C.G.S. § 7A-27(d) (1989) — because of the importance of the question presented, we elect to vacate the Court of Appeals opinion dismissing the appeal and to consider the case on the merits. We do so pursuant to the Constitution of North Carolina, article IV, section 12(1), which gives this Court jurisdiction "to review upon appeal any decision of the courts below, upon any matter of law or legal inference" and gives it "general supervision and control over the proceedings of the other courts." *See Lea Company v. N.C. Bd. of Transportation*, 317 N.C. 254, 263, 345 S.E.2d 355, 360 (1986) (general supervisory powers provided by article IV, section 12(1) rarely used but may be invoked "to promote the expeditious administration of justice").

[2] Defendant assigns error to the trial court's failure to find that plaintiff waived the physician-patient privilege conferred by N.C.G.S. § 8-53.[1] He argues that plaintiff waived the privilege by

---

1. N.C.G.S. § 8-53 provides:

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

providing copies of her medical records to opposing counsel, testifying at her deposition concerning her treatment by other doctors, and identifying Drs. Thompson and Tyson as witnesses.

A patient may impliedly waive the physician-patient privilege by his or her conduct. *Cates v. Wilson*, 321 N.C. 1, 14, 361 S.E.2d 734, 742 (1987). The facts and circumstances of a particular case determine whether a patient's conduct constitutes an implied waiver. *Id.; Capps v. Lynch*, 253 N.C. 18, 23, 116 S.E.2d 137, 141 (1960). Both *Cates* and *Capps* applied this ad hoc test in the context of a trial and held that each plaintiff's public disclosure of his or her medical condition at trial waived the privilege.

> The privilege is waived by implication where the patient calls the physician as a witness and examines him as to patient's physical condition, where patient fails to object when the opposing party causes the physician to testify, or where the patient testifies to the communication between himself and physician.

*Capps*, 253 N.C. at 23, 116 S.E.2d at 141 (quoted in *Cates*, 321 N.C. at 14, 361 S.E.2d at 742). Defendant asks us similarly to find an implied waiver by virtue of plaintiff's conduct during discovery, asserting that no meaningful distinction exists between disclosures occurring at trial and disclosures made during discovery.

Defendant also assigns error to the trial court's finding that defense counsel acted improperly by privately contacting and discussing plaintiff's medical care and treatment with plaintiff's nonparty treating physicians, and to the trial court's order requiring defense counsel to obtain plaintiff's consent or a court order before further contacting plaintiff's nonparty treating physicians. Assuming, without deciding, that plaintiff impliedly waived her physician-patient privilege by her pretrial conduct, we overrule this assignment of error and uphold the finding and order entered by the trial court on grounds distinct from that of physician-patient privilege. We hold that the trial court did not abuse its broad discretionary power

---

shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice. If the case is in district court the judge shall be a district court judge, and if the case is in superior court the judge shall be a superior court judge.

to ensure justice in entering the order. *Miller v. Greenwood,* 218 N.C. 146, 150, 10 S.E.2d 708, 711 (1940) (within trial court's discretion to take any action within the law "to see to it that each side has a fair and impartial trial"); *see also State v. Britt,* 285 N.C. 256, 271-72, 204 S.E.2d 817, 828 (1974) ("paramount duty" of trial court to control course of trial so as to prevent injustice to any party; trial court possesses broad discretionary powers in exercise of this duty). We affirm the order on this basis and on the basis of public policy grounds discussed below.

Courts in numerous other jurisdictions have considered whether opposing counsel may conduct *ex parte* interviews of the injured party's treating physicians following waiver of the physician-patient privilege. Annot. "Discovery: right to ex parte interview with injured party's treating physician," 50 A.L.R.4th 714 (1986). The emerging consensus adheres to the position that defense counsel is limited to the formal methods of discovery enumerated by the jurisdiction's rules of civil procedure, absent the patient's express consent to counsel's *ex parte* contact with her treating physician. *See, e.g., Petrillo v. Syntex Laboratories, Inc.,* 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986), *appeal denied,* 113 Ill. 2d 584, 505 N.E.2d 361, *cert. denied,* 483 U.S. 1007, 97 L. Ed. 2d 738 (1987). This rule has been adopted in jurisdictions where waiver of the physician-patient privilege is mandated by statute upon the filing of a suit which places the plaintiff's medical condition at issue, *see, e.g., Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976), and where waiver is deemed by judicial decision to occur upon the filing of a lawsuit, *see, e.g., Anker v. Brodnitz,* 98 Misc. 2d 148, 413 N.Y.S.2d 582 (1979). *See also Smith v. Ashby,* 106 N.M. 358, 743 P.2d 114 (1987) (privilege abolished by statute, but *ex parte* interviews prohibited on public policy grounds, absent plaintiff's consent). A related line of cases prohibits trial courts from ordering physicians to submit to *ex parte* interviews because private interviews are not statutorily prescribed methods of discovery: *Jaap v. District Court of Eighth Judicial Dist.,* 191 Mont. 319, 623 P.2d 1389 (1981); *Johnson v. District Court of Oklahoma County,* 738 P.2d 151 (Okla. 1987); *State ex rel. Klieger v. Alby,* 125 Wis. 2d 468, 373 N.W.2d 57 (Wis. App. 1985).

The statutory physician-patient privilege is distinct from the rule prohibiting unauthorized *ex parte* contacts in several respects. First, the privilege is purely statutory; at common law communications from patients to physicians were not privileged. *Sims v. In-*

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

*surance Co.*, 257 N.C. 32, 36, 125 S.E.2d 326, 329 (1962). In contrast, the prohibition against *ex parte* contacts "is derived from neither statute nor established common law; rather, it is an emerging court-created effort to preserve the treating physician's fiduciary responsibilities during the litigation process." *Manion v. N.P.W. Medical Center of N.E. Pa., Inc.*, 676 F. Supp. 585, 593 (M.D. Pa. 1987).

Both the privilege and the rule are rooted in public policy. However, the policies underlying the privilege are more narrow than those underlying the prohibition against *ex parte* contacts. The purposes of North Carolina's statutory physician-patient privilege are to encourage the patient to fully disclose pertinent information to a physician so that proper treatment may be prescribed, to protect the patient against public disclosure of socially stigmatized diseases, and to shield the patient from self-incrimination. *Cates v. Wilson*, 321 N.C. at 14-15, 361 S.E.2d at 742; *Sims v. Insurance Co.*, 257 N.C. at 36, 125 S.E.2d at 329. The rationales underlying the rule prohibiting *ex parte* contacts with nonparty treating physicians encompass and extend beyond those purposes enumerated in *Cates* to embrace other grounds as well.

The privilege and the rule prohibiting *ex parte* contacts differ in function as well as purpose. "The statutory privilege determines whether certain information may be disclosed. In contrast, the prohibition against unauthorized *ex parte* contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, *i.e.*, it affects defense counsel's methods, not the substance of what is discoverable." *Manion v. N.P.W. Medical Center of N.E. Pa., Inc.*, 676 F. Supp. at 593.

The primary policy reason against allowing *ex parte* interviews involves the unique and confidential nature of the physician-patient relationship. *Duquette v. Superior Court of Arizona*, 161 Ariz. 269, 275, 778 P.2d 634, 640 (Ariz. App. 1989). Patients expect that physicians will comply with the Hippocratic oath, which states in part: "Whatever, in connection with my professional practice or not in connection with it, I see or hear, in the life of men, which ought not to be spoken abroad, I will not divulge, as reckoning that all such should be kept secret." *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d at 589, 499 N.E.2d at 957-58. Both The American Medical Association's (AMA) Principles of Medical Ethics and The Current Opinions of the Judicial Council of the AMA affirm the physician's duty to protect the patient's confidences. *Id.* at 590,

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

499 N.E.2d at 957-58. As stated by the Court of Appeals of Arizona: "We believe the public has a widespread belief that information given to a physician in confidence will not be disclosed to third parties absent legal compulsion, and we further believe that the public has a right to have this expectation realized." *Duquette v. Superior Court of Arizona*, 161 Ariz. at 275, 778 P.2d at 640. This expectation of confidentiality exists separate and distinct from the matter of statutory privilege. As stated by the Supreme Court of Iowa: "[W]e cannot accept defendant's contention that the plaintiff's suit totally waives the confidential nature of the physician-patient relationship. It only waives the application of the privilege, which is confined by the statute to a testimonial setting, and does not speak to ex parte communications in a nontestimonial setting." *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 356 (Iowa 1986) (interpreting Iowa statutory privilege). Unlike the Iowa statute, N.C.G.S. § 8-53 is not confined by its plain language to a testimonial setting, but instead protects physicians generally from being "required to disclose" confidential information. We nevertheless agree with the Iowa Supreme Court's conclusion that, once the statutory privilege has been waived, the confidential nature of the physician-patient relationship remains, even though medical information is then subject to discovery.

Assuming the privilege has been waived, the question remains by what procedures and subject to what controls the exchange of information shall proceed. Private interviews with nonparty treating physicians are neither authorized nor prohibited by our discovery rules.[2] Other courts have concluded that formal discovery procedures enable defendants to reach all relevant information while simultaneously protecting the patient's privacy by ensuring supervision over the discovery process, via presence of counsel or judicial intervention, if warranted. *See Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d at 597, 499 N.E.2d at 963; *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d at 356; *Anker v. Brodnitz*, 98 Misc. 2d at 153-54, 413 N.Y.S.2d at 585-86. Defendant complains that depositions are expensive and time consuming. "Oral depositions are not the only means available to obtain the opinion

---

2. "Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission." N.C.G.S. § 1A-1, Rule 26(a) (1983).

CRIST v. MOFFATT

[326 N.C. 326 (1990)]

of the treating physician. A deposition upon written questions is less costly and copies of all relevant medical records are easily obtainable pursuant to the rules." *Jordan v. Sinai Hosp. of Detroit, Inc.*, 171 Mich. App. 328, 343-44, 429 N.W.2d 891, 898 (1988).

> Moreover, while *ex parte* interviews may be less expensive and time-consuming than formal discovery and may provide a party some means of equalizing tactical advantage, these interests are insignificant when compared with the patient-plaintiff's interest in maintaining the confidentiality of personal and possibly embarrassing information, irrelevant to the determination of the case being tried.

*Nelson v. Lewis*, 130 N.H. 106, 111, 534 A.2d 720, 723 (1987).

Another compelling policy argument against *ex parte* contacts concerns the liability of the nonparty physicians. Although physicians, like other witnesses, may refuse to meet informally with defense counsel, all may not be conversant with their right to refuse. "A physician may lack an understanding of the legal distinction between an informal method of discovery such as an *ex parte* interview, and formal methods of discovery such as deposition and interrogatories, and may therefore feel compelled to participate in the *ex parte* interview." *Duquette v. Superior Court of Arizona*, 161 Ariz. at 276, 778 P.2d at 641. Breaches of patient confidentiality, whether the result of inadvertence or pressure by the interviewer, may expose the doctor to charges of professional misconduct or tort liability.[3] Regarding the potential for improper pressure, one court has stated:

> An unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views. The potential for impropriety grows even larger when defense counsel represents the treating physician's own insurance carrier and when the

---

3. We note that the North Carolina Court of Appeals has followed other jurisdictions in allowing a plaintiff to recover from a health care provider for unauthorized disclosure of confidential information in a medical malpractice action. *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 9-12, 330 S.E.2d 242, 248-50, *disc. rev. denied as to additional issues*, 314 N.C. 548, 335 S.E.2d 27 (1985), *reversed in part on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986).

doctor, who typically is not represented by his personal counsel at the meeting, is unaware that he may become subject to suit by revealing the plaintiff/patient's confidences which are not pertinent to the pending litigation.

*Manion*, 676 F. Supp. at 594-95. The Iowa Supreme Court has expressed its concern

> with the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician. We believe this determination is better made in a setting in which counsel for each party is present and the court is available to settle disputes.

*Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d at 357.

In summary, the gravamen of the issue is not whether evidence of plaintiff's medical condition is subject to discovery, but by what methods the evidence may be discovered. We conclude that considerations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which *ex parte* contacts place the nonparty treating physician supersede defendant's interest in a less expensive and more convenient method of discovery. We thus hold that defense counsel may not interview plaintiff's nonparty treating physicians privately without plaintiff's express consent. Defendant instead must utilize the statutorily recognized methods of discovery enumerated in N.C.G.S. § 1A-1, Rule 26. For additional authorities reaching the same result on similar policy grounds, *see Alston v. Greater Southeast Community Hosp.*, 107 F.R.D. 35 (D.D.C. 1985); *Weaver v. Mann*, 90 F.R.D. 443 (D. N.D. 1981); *Garner v. Ford Motor Co.*, 61 F.R.D. 22 (D. Alaska 1973); *Fields v. McNamara*, 189 Colo. 284, 540 P.2d 327 (1975); *State ex rel. Woytus v. Ryan*, 776 S.W.2d 389 (Mo. 1989); *Loudon v. Mhyre*, 110 Wash. 2d 675, 756 P.2d 138 (1988).

We do not intend by this holding to discourage consensual informal discovery. *See Wenninger v. Muesing*, 307 Minn. at 412, 240 N.W.2d at 337; *Smith v. Ashby*, 106 N.M. at 360, 743 P.2d at 116.

**[3]** Defendant next assigns error to the trial court's order to defense counsel to fully disclose the substance of all private conversations between defense counsel and plaintiff's nonparty treating physicians. He argues that this order forces him to reveal his work product, which is protected under N.C.G.S. § 1A-1, Rule 26(b)(3). He also argues that plaintiff may obtain the same information by deposing the physicians herself.

The order was remedial in purpose and effect, designed to enable plaintiff to prepare for evidence that might be offered at trial as a result of the *ex parte* discovery. As such, its entry was within the broad, inherent, discretionary power of the trial court to control the course of a trial so as to prevent injustice to a party. *Miller v. Greenwood*, 218 N.C. at 150, 10 S.E.2d at 711 (within trial court's discretion to take any action within the law "to see to it that each side has a fair and impartial trial"); *see also State v. Britt*, 285 N.C. at 271-72, 204 S.E.2d at 828 ("paramount duty" of trial court to control course of trial so as to prevent injustice to any party; trial court possesses broad discretionary powers in exercise of this duty). While the court could have required plaintiff to secure the information by deposing the physicians herself, it was not required to do so. This assignment of error is overruled.

In his next assignment of error, defendant asserts that the trial court erred in reserving ruling on the admissibility of information or opinions obtained during the private interviews with plaintiff's treating physicians. Defendant admits this assignment is premature, but states he brought it forward to preserve it and to urge this Court to vacate the trial court's order *in toto*. Because we hold that the order was proper, we overrule this assignment of error.

Finally, defendant argues that if plaintiff did not waive the physician-patient privilege, plaintiff should seek any possible remedy for disclosure of privileged information against Drs. Tyson and Thompson, rather than against defense counsel. We have held that the trial court acted within its broad discretionary powers in ordering disclosure by defense counsel. This assignment of error is overruled.

For the reasons stated, the opinion of the Court of Appeals dismissing the appeal is vacated. The order entered on 10 February 1988 in the Superior Court, Buncombe County, is affirmed. The

case is remanded to the Court of Appeals for further remand to the Superior Court, Buncombe County, for further proceedings not inconsistent with this opinion.

Court of Appeals opinion vacated; superior court order affirmed; case remanded.