The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Chrystal Redding Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner.
***********
 EVIDENTIARY RULINGS
The objections raised by the parties in the depositions are OVERRULED.
The objection by plaintiff's counsel to the inclusion of medical records and depositions of Dr. Kuzma and Mr. Al Gorrod and their depositions is OVERRULED and the depositions and medical records of Dr. Kuzma and Mr. Gorrod are included in the record. The videotape of plaintiff's job is stricken along with any opinions expressed by doctors that are based on said videotape.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement as,
 STIPULATIONS
1. The employee is Pamela Smithey.
2. The employer is Dixie Sales.
3. Key Risk Management Services, Inc. is the servicing agent.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
5. The employer-employee relationship existed between the employer and the employee on or about December 9, 1994, the date of the alleged compensable injury.
6. Stipulated Exhibit #1 — Plaintiff's personnel file — 39 pages; Stipulated Exhibit #2 — Plaintiff's medical records — 63 pages.
7. Plaintiff was out of work from April 3, 1995 until October 17, 1995 and from June 28, 1996 until the date of the hearing before the Deputy Commissioner.
8. The issues for hearing before the Deputy Commissioner were (i) whether plaintiff sustained a compensable occupational disease arising out of and in the course of employment pursuant to N.C.G.S. § 97-53, and if so, to what amount of past and future temporary total disability benefits is plaintiff entitled to as a result of her compensable injury; (ii) to what medical treatment is plaintiff entitled in order to effect a cure or to provide relief for her alleged compensable injury; (iii) whether defendant-employer is entitled to an off-set for the $3,692.00 previously paid to plaintiff-employee as short term disability benefits.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was forty-three (43) years old at the time of the hearing and had completed the tenth grade. She began work with defendant-employer on September 14, 1989 as a lawnmower parts packer.
2. Plaintiff's job duties required her to remove lawnmower parts from a "tote" travelling down a conveyor belt, wrap the parts, place them in a box or assemble a box in which the parts could be placed, seal the box, and replace the box on a conveyor belt for shipment. Plaintiff would pack as many as 150-400 packages per day depending on the size of the parts.
3. In May of 1994, plaintiff sustained a back injury which kept her out of work until August of 1994. Upon her return to work and given her weight lifting restrictions, plaintiff was assigned to pack small lawnmower parts. Over a series of weeks, plaintiff's hours increased from four to six to eight hours a day. As a packer of small lawnmower parts, plaintiff would pack as many as 300 to 400 packages a day with each package containing between one and ten parts.
4. Plaintiff first mentioned her hand problem to Dr. Albert Bartko on September 29, 1994. At that time, plaintiff was complaining of intermittent paraesthesia in all fingers of both upper extremities. This problem occasionally woke plaintiff up at night and had been present for a few months.
5. On December 9, 19945, Dr. Bartko conducted nerve conduction studies that were positive for mild to moderate right carpal tunnel syndrome. Plaintiff was not taken out of work at this time, pursuant to her own request. No work restrictions were placed on plaintiff either.
6. Upon reviewing Plaintiff's Deposition Exhibit #1, a job description of packing lawnmower parts, Dr. Bartko noted that the description did not specifically quantify how repetitive the lifting and grasping tasks were, but that he would definitely be suspicious of this job as potentially exacerbating plaintiff's carpal tunnel problems.
7. On March 29, 1995, Dr. Bartko performed another nerve conduction study which revealed moderate light carpal tunnel syndrome in plaintiff's right wrist. There was also mild left carpal tunnel syndrome in plaintiff's left wrist which was diagnosed without a nerve conduction study.
8. On March 20, 1995, plaintiff was seen by Dr. David Dye, an orthopedic surgeon. Upon examining the plaintiff, taking x-rays of her right wrist, and obtaining the plaintiff's work history, Dr. Dye diagnosed plaintiff with right carpal tunnel syndrome in her hand and wrist. Dr. Dye initially pursued conservative treatment with wrist splints and medication and took plaintiff out of work beginning April 13, 1995.
9. On May 10, 1995, plaintiff underwent a carpal tunnel release of her right wrist. During the course of plaintiff's surgery, it was discovered that she had an anatomic variation of muscle fibers in her right hand that is generally only seen in a small number of cases.
10. Dr. Dye testified on deposition that plaintiff's job was a significant contributing factor to [the development of] her carpal tunnel syndrome. However, he did not say that plaintiff's job placed her at an increased risk of contracting carpal tunnel syndrome. When asked whether plaintiff's job placed her at an increased risk for developing carpal tunnel syndrome, Dr. Dye's first response was "Boy, that's a tough question." When the question was rephrased and Dr. Dye was asked if the job placed plaintiff at an increased risk "more than someone who is just out in the general public doing nothing," Dr. Dye replied, "No, you can't say that." Dr. Dye concluded that considering an individual without the muscle variation like plaintiff, who more efficiently grabbed the parts, the repetition of the job alone would not cause carpal tunnel syndrome. There was no other evidence in the record to establish increased risk, and therefore plaintiff has failed to establish the necessary elements of a compensable occupational disease claim.
11. On October 17, 1995, plaintiff returned to work packing small lawnmower parts. She did this for approximately three weeks, but her hands continued to hurt. Plaintiff was then transferred to a receptionist position with defendant-employer.
12. A job analysis of plaintiff's position of lawnmower parts packer was performed on April 11, 1995 by Alan Gorrod, an expert in ergonomic evaluation and occupational rehabilitation. Mr. Gorrod concluded that plaintiff's position had a negative risk factor for causing carpal tunnel and that it was not a job of repetitive motion. This opinion was based on many factors, including that the job entailed multiple and varied tasks with regular interruptions, and the tasks were performed at a low pace. From a vocational standpoint, Mr. Gorrod's opinion was the most competent with respect to whether plaintiff's job was repetitive in nature, and his opinion is assigned great weight on this issue.
13. Dr. Gary Kuzma, a hand surgeon, saw plaintiff on April 26, 1995 for the problem with her right hand. On examination, he noted decreased sensation of the ring and small finger and ultimately concluded that plaintiff's right hand symptoms were caused by ulnar neuropathy at the elbow. In his opinion, the sublaxating ulnar nerve was the source of plaintiff's symptoms versus her carpal tunnel problem.
14. Dr. Kuzma voiced an opinion concerning causation of plaintiff's symptoms, however, this opinion was stricken from the record as it was based on the inadmissable and missing job videotape. However, based on Alan Gorrod's written assessment, Dr. Kuzma opined that since plaintiff's job entailed various tasks, it was less likely to cause a repetitive motion injury.
15. On May 2, 1996, the employee received a five percent (5%) impairment rating from Dr. Dye for her right wrist and hand. Plaintiff was out of work from April 3, 1995 through October 16, 1995, and from June 28, 1996, when she was laid off, along with fourteen other employees. Plaintiff's disability was not a result of a compensable occupational disease.
16. After being laid off, while working as a receptionist for defendant-employer, plaintiff received unemployment benefits in the amount of $192.00 per week for sixteen weeks. She also received $3,692.00 of short-term disability benefits, which was funded in part by the employee. Defendants are not entitled to a credit for any short-term disability benefits paid.
17. The defendants' communications with Dr. Kuzma and Al Gorrod were not a violation of Salaam v. N.C. Department ofTransportation, 122 N.C. App 83 (1996), and Crist v.Moffat, 326 N.C. 326, 389 S.E.2d 41 (1990). Dr. Kuzma received Al Gorrod's job analysis, but never personally spoke with defendants, even though one of his staff members did. Mr. Gorrod had very limited contact with the defendant-carrier, and he had no prior contact with defense counsel before his deposition.
***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In December, 1994, plaintiff's complaints of carpal tunnel syndrome did not result from an injury by accident arising out of an in the course of plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has no disease, and no disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff is, therefore, not entitled to compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-53(13).
4. As previously found in the Deputy Commissioner's Order of September 2, 1998, the defendants did not participate in ex-parte communications with Dr. Gary Kuzma and Alan Gorrod; therefore their notes and depositions are admitted into evidence. Cristv. Moffat, 326 N.C. 326, 389 S.E.2d 41_(1990); Salaam v.N.C. Department of Transportation, 122 N.C. App 83 (1996). The job videotape is stricken from the record, since it has been lost.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This 20th day of September 1999.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER